TOM OLIVER v. THE STATE.

*No. 984.  · Decided October 20.*

1.  **Arson—Evidence—Motive.**—On a trial for arson it was not error to permit the witness, who was a stepdaughter of defendant, to ·testify that defendant had struck her with a stick, and that she had taken refuge at the home of her uncle, whose residence was the house subsequently burnt, such evidence going to establish the motive which prompted defendant to destroy the house.

2.  **Same—Defendant as a Witness—Cross-Examination as to Other Crimes**
Where a defendant becomes a witness in his own behalf, his credibility may be at-

tacked on cross-examination by questions as to the commission of other crimes by him. Following Jackson v. The State, ante, p. 281.

3. Same—Evidence as to Other Crimes—Charge with Reference to.—Where testimony as to the commission of other independent crimes has been permitted to be shown on cross-examination of the defendant when a witness, it is the duty of the court to charge the jury in writing that such testimony was admitted not as proof of defendant's guilt of the crime charged, but only as affecting his credibility as a witness, and a failure to so instruct is fatal and reversible error.

APPEAL from the District Court of Shelby. Tried below before Hon. DRURY FIELD, Special Judge.

This appeal is from a conviction for arson, the punishment being assessed at a term of seven years in the penitentiary.

The building alleged and the one proved to have been destroyed by the fire was the dwelling house of one W. J. Crump, in Shelby County. The fire occurred on the night of the 25th of July, about 11 o'clock. The smokehouse was set afire, and the fire was communicated from it to the dwelling house, and both were consumed. In plowed ground, back of the smokehouse, were found tracks which were accurately measured, and corresponded with tracks made by defendant's shoes. He was also compelled by some parties, after he was brought to the scene of the burning, to put his foot into some of these tracks, and these parties testified that his shoes fitted the tracks exactly. These tracks led up to a place where horse tracks were found. These horse tracks were measured and followed. Some of the witnesses testified, that they knew from the impressions made by these tracks that the horse making them was pacing, and was a pacer. These horse tracks led along a road near a house, and a witness testified, that at a late hour of that night he saw a man passing the road on horseback; that a dog ran out at the horse, and he heard the horseman curse the dog and recognized defendant's voice. These tracks also led across a bridge, and two planks in the bridge had been broken, as if they had given away under a horse, and the appearance indicated that the legs of the horse had gone through the holes thus made. The tracks were trailed near to defendant's house the morning after the fire. His horse was examined. He was a pacer; his legs were skinned, and it looked as if recently done; his tracks fitted the measure of the horse tracks which had been trailed, though the hoofs looked as if they had been freshly cut and pared that morning.

Defendant's hostility to W. J. Crump and motive for the burning appeared to have been occasioned by the fact that Miss Jimmie Powdrell, who was a stepdaughter of defendant, had been driven by his harsh and cruel treatment from his house, and had sought a refuge and home with her uncle, W. J. Crump. The following is her testimony, offered by the State:

"I am a niece of W. J. Crump, and live at his house, and lived there at the time the house of W. J. Crump was destroyed by fire. I am also a stepdaughter of defendant; have not lived with defendant since about the 1st day of July, 1894. I left the house of defendant and went to live with my uncle, because the defendant did not treat me right. A few days before I left his (defendant's) house he hit me with a stick while I was at work in the field. [This testimony about being struck with a stick by defendant was objected to, and the objection overruled.] At the time I left the house of defendant he refused to let me have any of my wearing apparel or anything I had. After I had gone from the home of defendant about two or three miles on my way to W. J. Crump's, defendant on the same day followed and overtook me, and told me to go back home; that my mother, who is the present wife of defendant, was not going to leave her home. I did not go back, but went to W. J. Crump's, and have lived there since. I left because my stepfather drove me off, and said I should not remain there any longer. Defendant did not tell me not to go to the brick yard. I was not going there anyway, but was going to W. J. Crump's, where I was going to get me a home. I went to W. J. Crump's the same day and engaged me a home, and myself and Arthur Crump went back in a wagon on Sunday following, to the house of defendant, after my things. When we got to the house defendant refused to let me have my clothing, bedding, etc., and told Arthur Crump that he (defendant) did not want to hurt his feelings, but said to him to leave the place. I started on foot, passed the first house, and Arthur Crump came on with the wagon behind me, and overtook me about one-half a mile from the house. I then got in the wagon and went to W. J. Crump's, where I now live."

Upon his examination in chief, defendant testified as follows: "On the evening of the 25th of July, 1894, I went to John Green's, about eight miles from my house, to rent a syrup mill. I passed Rufus Hursey's house a short time before sundown, and came back to Rufus Hursey's about dark, and ate supper at Rufus Hursey's house. I remained there until about half-past 9 o'clock in the night, then left and went to Henry Porter's, who lived about one-fourth mile from Hursey's, on my way home. Henry Porter had gone to church, so his wife said. She had gone to bed when I got there. I talked to her a few minutes, and went from there directly home. Got home, went into the house, pulled off my shoes, lit a match, looked at the clock, and said to my wife, 'It is half-past 10 o'clock in the night.' She asked me if I wanted supper. I said, 'No; I have been to supper.' We went out on the gallery, and I said, 'I want you to get up soon in the morning; I want to get a soon start.' I then went into my room and went to bed, and staid there all night. I called to my wife about 1 o'clock in the night for sugar and turpentine. She brought it to me. My side and back were hurt-

ing me. I did not go to the house of W. J. Crump; neither did I set it on fire that night, and I know nothing about it. I did say to J. M. Hammer, when he was measuring my horse's foot next morning, 'If you accuse me of burning Crump's house, take me along.' The reason I said that, I thought when they were measuring my horse's feet the next morning that they believed I burned the house.''

Upon his cross-examination the defendant testified as follows: That he had been at different times, previous to this charge, indicted for different offenses. That he had on one occasion set fire to an ox and burned him unmercifully, and that he was convicted and it cost him $62.50. That he had never mistreated his family. That he did not tell his wife he was going to stamp W. J. Crump the first time he saw · him. That he did not in any way abuse W. J. Crump, but has always been a friend to him. Defendant said: ''Jimmie Powdrell left my home against my consent. I told her not to go to the brickyard to live, and if she wanted a home to go to W. J. Crump's and get her a home. I did say to J. M. Hammer the next morning after the house was burned, at my house, 'I understand Crump got his house burned last night.' Darnell told me about it soon that morning, before Hammer came to my house. My left foot was shot in the Mansfield fight during the war, and the 'leaders' of my toes are drawn and make my toes crump up. I did not refuse to let my foot be put in the track at W. J. Crump's house, but said to Hughes, Swain, and Burrows, I would like to have a friend with me. I told them I knew they were not my friends.''

The following appears in defendant's bill of exception number 5: ''The State offered in testimony that the defendant, previous to the time he (defendant) was charged with the crime of arson, had been indicted for several other offenses, and the court admitted said testimony, with verbal instructions to the jury that they should only consider said testimony in passing upon the credibility of the witness; and the court having failed in its written charge to instruct the jury as to the purpose for which said testimony was admitted, the defendant then and there upon the trial of said cause excepted.'' Which said bill of exception was signed by the presiding judge, with the following explanation: ''I approve this bill of exception, with this qualification: The defendant, Tom Oliver, being upon the stand, testifying for himself, was asked by the district attorney was he ever before indicted for any offense, which was objected to, because it was irrelevant. The court overruled the objection and permitted him to answer the question, stating to the jury they could only consider it as to the credibility of the defendant as a witness in the cause, and for no other purpose, to which ruling the defendant reserved an exception.''

*Hugh B. Short*, for appellant.—On the inadmissibility of Miss Powdrell's testimony to the effect that defendant struck her with a stick,

the following are cited: 1 Greenl. on Ev., p. 80, sec. 53, note b; Green's case, 12 Texas Crim. App., 51; Heard's case, 9 Texas Crim. App., 1; Wilborn's case, 41 Texas, 237; Cameron's case, 9 Texas Crim. App., 332.

The court erred in failing and refusing to deliver, in its written charge to the jury, an instruction to the effect that certain testimony tending to prove that defendant had heretofore been charged with other offenses than the one for which he was then on trial had been admitted before the jury, but the jury could consider this testimony only for the purpose of enabling them to determine the weight to which the testimony of the defendant as a witness was entitled, and his credibility as such witness. Code Crim. Proc., art. 682; Davidson's case, 22 Texas Crim. App., 372; Washington's case, 23 Texas Crim. App., 336; Maine's case, 23 Texas Crim. App., 568; Branch's case, 15 Texas Crim. App., 96; Barron's case, 23 Texas Crim. App., 462; Tucker's case, 23 Texas Crim. App., 572; Burk's case, 24 Texas Crim. App., 332; Littlefield's case, 24 Texas Crim. App., 167; Davis' case, 23 Texas Crim. App., 210; Wheeler's case, 23 Texas Crim. App., 598; Cravey's case, 23 Texas Crim. App., 677; McCall's case, 14 Texas Crim. App., 353; White's case, 30 Texas Crim. App., 656; Thompson's case, 29 Texas Crim. App., 209; Foster's case, 28 Texas Crim. App., 45; Rogers' case, 26 Texas Crim. App., 404; Williams' case, 18 Texas Crim. App., 409; Melton's case, 12 Texas Crim. App., 488; Jackson's case, ante, p. 281; Hargrove's case, ante, p. 431; Warren's case, ante, p. 502.

*R. L. Henry*, Assistant Attorney-General, for the State.

SIMKINS, JUDGE.—Appellant was convicted of arson, and his punishment assessed at seven years.

1. Appellant claims the court erred in permitting Miss Powdrell to testify, that appellant had quarrelled with said witness, who was his stepdaughter, and had struck her with a stick. The evidence shows that appellant treated his stepdaughter badly, and had driven her from his house and would not let her have her clothes when she came for them. She had taken refuge at her uncle's home, and on returning next morning with young Crump, for her clothes, appellant ordered them to leave and called for his pistol; and they left at once. A day or two after this the house of her uncle, W. J. Crump, was burned.

The object of this testimony was to show motive for the burning; that the ill-will of defendant to his stepdaughter prompted him to destroy the house which had given her a home. And for this purpose the testimony was admissible.

2. The Court did not err in permitting the State to prove, by cross-examination of defendant, that he had been charged with other offenses. Jackson's case, ante, p. 281.

3. A fatal error was committed by the court in not instructing the jury as to the purpose for which the evidence as to former offenses was admitted. As held by this court, it was the duty of the trial court to have charged the jury, in writing, that the testimony was admitted not as proof of appellant's guilt of the crime charged, but only to affect his credibility as a witness. Jackson's case, ante, p. 281; Hargrove's case, ante, p. 431; Warren's case, ante, p. 502.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.