## GIP HARDIN v. THE STATE.

### No. 1769. Decided February 15, 1899.

**1. Setting Capital Cases for Trial, and Taking Up for Trial.**

In setting capital cases for trial the court is not required to set them according to priority of their file numbers, but in calling the docket, cases have to be set or disposed of as they are reached. The trial court may, of its own motion, continue a capital case, which has been set with the consent of the district attorney, where the defendant in such case does not object, and a defendant in another capital case set and called in place of the one continued can not be heard to complain of such continuance in the former case.

**2. Murder—Continuance—Diligence.**

Where the killing occurred after dark on the night of March 28th (court being in session), defendant was immediately arrested and placed in jail, indictment returned on the following day, March 29th, counsel secured by defendant on March 31st, the cause set for trial April 4th, process for a majority of his witnesses having been sued out on March 31st, and thereafter for other witnesses as fast as defendant ascertained their names and what they would prove; Held, this was reasonable diligence, and the application for continuance for such witnesses should have been granted.

**3. Same—Character Witnesses.**

An application for continuance to prove defendant's character in a distant county from which he had removed to and lived two years in the county where the homicide occurred does not show materiality, and it was not error to refuse such application.

**4. Same—Materiality.**

On a trial for murder, where it was a material matter for defendant to show, in support of his theory, that deceased fired the first shot, it was error to overrule an application for a continuance for witnesses who would have testified that they saw the firing between the parties, and, judging from the flash of the pistols and the position of the parties, deceased fired the first shot at defendant; such testimony was entitled to be considered under the peculiar circumstances of this case.

**5. Same—Diligence.**

Where it appeared, in connection with the facts stated in paragraph 2, supra, that on the 2d of April, two days before the trial, defendant applied to the court for process for a material witness in a distant county, which the court refused to have issued because too late to procure the witness' attendance on the trial; Held, if defendant was diligent in ascertaining the testimony of said witness, and sought process for him at the earliest moment, this was sufficient ground for a continuance.

**6. Same—Materiality.**

On a trial for the murder of a deputy sheriff who, it was claimed by the prosecution, was killed in an attempt to legally arrest defendant, Held, the testimony of witnesses to prove that no attempt was made to arrest defendant, but that deceased followed him out of the house into the street, assaulted and fired the first shot at him, was material, and a continuance should have been granted for such witnesses.

**7. Evidence to Defeat the Grounds for a Continuance Not Admissible on the Trial—Practice.**

While it may be competent and proper, on a motion for new trial, to show the im-probability of testimony sought for in an application for continuance, this can not be done on the trial of the case; the admission of such testimony on the trial not being pertinent to any issue then before the court, is both inadmissible and calcu-lated to prove injurious to defendant.

**8. Jurors and Jury Law.**

Jurors are not rendered incompetent by their having testified on the question of a change of venue in the case.

**9. Evidence—Res Gestae.**

When the homicide, which occurred almost immediately thereafter, was brought about by the violent language and conduct of defendant, who provoked a difficulty with a third party in the dining-room of the hotel kept by deceased, evidence as to such language and conduct of defendant was admissible as part of the res gestae, al-though deceased was not present in the dining-room all the time during said difficulty.

**10. Evidence—Proof of Official Character of an Officer.**

On the trial for the murder of a deputy sheriff while attempting to make an arrest, the official character of the officer may be proved by parol, it not being directly in issue. Distinguishing Huff v. State, 23 Texas Criminal Appeals, 291.

**11. Same—Acts, Conduct, and Declarations of a Defendant.**

The statements, acts, and conduct of a defendant after the homicide, and his re-fusal to be arrested, are competent as evidence going to shed light upon the transac-tion in which he killed deceased.

**12. Expert and Nonexpert Evidence as to Use of Firearms and Range of Bullets.**

Physicians or doctors, whether experts or nonexperts in the using of firearms, or the course of balls after entering the human body, are not competent to give an opinion as to the course a ball would take after entering the hand of a party holding a pistol with the entire hand grasped upon the handle of the pistol, nor to state that there could not have been a wound, as was found on the deceased, inflicted on the lit-tle finger and through the hand, without the ball having left some mark or sign on the handle of the pistol. Upon proof of the fact how deceased in firing held the handle of his pistol, and appearance of the wound in the hand, its character and cause, the jury would be as competent to determine whether a mark or sign would have been left on the handle of the pistol by the ball which entered deceased's hand as any expert would have been. It was not a matter for expert testimony, but the facts should have been proved and the jury left to form their own conclusions.

**13. Homicide in Resistance to Arrest—Self-Defense—Charge.**

On a trial for murder of a deputy sheriff, where the issue was as to the authority of the officer to make the arrest for a disturbance of the peace, and the right of de-fendant as to self-defense in resisting the attempted arrest, the charge of the court should have stated the conditions which brought about the conflict, and instructed the jury as to defendant's right of self-defense in connection with the attempted ar-rest.

**14. Same—Self-Defense.**

If deceased, an officer, was attempting an arrest of defendant in a lawful manner, and defendant drew a pistol to prevent being arrested, and fired upon the officer, he, defendant, could not set up self-defense.

**15. Same—Charge.**

Where defendant does not resist an officer in attempting to arrest him, but is

40th Crim. Reps.—14

merely attempting to escape or evade arrest, and the officer shoots at him to kill him in order to prevent his escape, the defendant's right to kill in self-defense would be perfect, and the charge of the court should so instruct the jury where such a phase of case is presented.

### 16. Same—Manslaughter—Charge.

Where deceased, as an officer, was attempting to arrest defendant in a lawful manner, and defendant resisted the arrest, and the deceased used more force than was reasonably necessary to effect the arrest, defendant would have the right to resist such excessive force, and if he killed the officer it might be manslaughter, and under such state of case the court should so instruct the jury.

### 17. Charge of Court—Sufficiency of.

Where the evidence suggests a theory of defense, the theory should be properly presented in the charge of the court, no matter what the opinion of the court may be as to the weakness or strength of the evidence.

### 18. Misconduct of Jury—View, etc., of the Locus in Quo.

On a trial for murder, where it appeared that some of the jury, in going to and from their meals, viewed and took measurements of the locus in quo, but such matters were not of a character to affect their findings, this would not constitute reversible error; but the trial court should, as far as possible, guard against allowing a jury to go upon the ground where the homicide occurred.

APPEAL from the District Court of Kimble. Tried below before Hon. W. M. ALLISON.

Appeal from a conviction for murder in the second degree; penalty, imprisonment for thirty-five years in the penitentiary.

The indictment charged appellant with the murder of John Turman, on Monday, March 28, 1898, by shooting him with a pistol. The District Court of Kimble County was in session at the time the killing occurred, and the indictment against appellant was returned by the grand jury on March 29th, the day after the killing. The case was set for trial, and defendant was placed on trial on the following Monday, it being the 4th day of April.

It will be found that the opinion of the court below states all the essential facts leading up to and attendant upon the homicide, and no further statement as to the facts is required.

Errors complained of are fully set out in briefs of counsel below.

*Martin & Martin, S. D. Foote,* and *Camp & Camp,* for appellant. The court erred, in forcing defendant into trial, over his objection, before cause No. 653, the State v. A. W. Haley, which was regularly upon the docket of the court, was disposed of in a lawful manner and in accordance with the rules of practice, said cause No 653 having precedence on the docket to this cause against this defendant.

A case can not be called out of its regular order and continued without any lawful showing in order to place a subsequently filed case in its place on the docket and force a trial of the latter case over defendant's objection. Thomas v. State, 36 Texas, 315.

The court erred in overruling defendant's first application for a continuance. 1. Where, in a sudden encounter between two persons, shooting commences and one of the parties is killed, and there is only one witness for the State who indirectly testifies that defendant fired

the first shot, while on the other hand defendant's witnesses tend to establish a case of self-defense and that deceased fired the first shot at defendant, an application for continuance setting out that defendant expected to prove by the absent witnesses that deceased fired the first shot at defendant should have been granted. 2. Where State's witnesses testify that deceased has stated in their hearing that he would "have to" arrest defendant, though not stating that defendant heard it, a first application for continuance for witnesses by whom defendant would have proved that at the time of the homicide deceased was not attempting to arrest defendant should have been granted. 3. It is error to overrule a defendant's first application for continuance for witnesses by whom he expects to prove his previous good character as that of a law abiding and peaceable citizen, he being apparently a stranger in the county of the trial. 4 It is no reason for refusing a first application for a continuance that the testimony is cumulative, and where the testimony on the trial develops the probable truth of the absent testimony and a new trial has been refused, it is reversible error for which the appellate court should reverse and remand for further proceedings. Irvine v. State, 20 Texas Crim. App., 12; Harris v. State, 18 Texas Crim. App., 287; 12 Texas Crim. App., 330, 554, 583; Pinckord v. State, 13 Texas Crim. App., 468; 17 Texas Crim. App., 650; Wilson v. State, 18 Texas Crim. App., 577; Adams v. State, 19 Texas Crim. App., 1; Stanley v. State, 16 Texas Crim. App., 393.

The court erred in not sustaining defendant's challenge for cause as to the juror T. W. Frasier.

A witness who has been summoned to testify on hearing of defendant's application for change of venue, and who joined in making the controverting affidavits for the State to defendant's application for change of venue, and who had been actively engaged and in private consultation with the prosecution, is an incompetent juror, and should be excused when challenged for cause by the defendant. Wills. Crim. Stats., art. 673; West v. State, 8 Texas Crim. App., 119.

The court erred in permitting the witnesses Tom Morse, Bertha Turman, and Will Haley, over defendant's objection, to detail conversations between defendant and third parties, it not having been shown that deceased had heard the conversations as detailed; also in allowing the witness Bertha Turman to testify that during said conversation her sister had run out of the room screaming. White's Penal Code, sec. 1243, p. 468, and authorities there cited.

The court erred in not excluding from the jury the testimony of the State's witnesses Tom Morse and Charley Broom when defendant moved the court to exclude all that portion of said testimony controverting the facts as set out in defendant's first application for a continuance.

The court is not permitted to allow testimony controverting defendant's first application for a continuance to remain before the jury over defendant's objection, when defendant moves the court to exclude the same on discovering the purpose of said testimony, and in permitting

such testimony to remain before the jury the defendant has been denied a right to which he is entitled under the law.   Lane v. State, 28 S. W. Rep., 202.

The court erred in permitting the State's witness John L. Jones to testify over defendant's objection that deceased, John Turman, was a deputy sheriff.

It is improper to prove the official capacity of a person by parol when the best evidence is demanded and no excuse is made for its nonproduction.   In this case the appointment in writing and oath of office should have been produced after having been demanded.

The court erred in permitting the witnesses Dr. Burt and Dr. King to testify for the State, over defendant's objection, that a person holding a pistol in the right hand in the "ordinary" way in which a pistol is generally held, with the hand grasped entirely over the handle of the pistol, could not have received wounds like those inflicted on the hand of deceased without some mark having been made by the bullet on the handle of the pistol.

It is error to permit witnesses for the State, over defendant's objection, to testify and answer hypothetical questions not based upon facts adduced in evidence, and especially so where testimony is of a character calculated to prejudice the rights of the defendant, as in this case it is clearly apparent that the State was endeavoring to show that deceased was shot through the hand by defendant before he (deceased) had ever got his pistol in his hand.

The court erred in not sustaining defendant's challenges for cause as to the jurors Graham, Prentice, Patterson, and McWhorter.

A witness who has been summoned in a case, either in behalf of the State or defendant, is not a competent juror, and should be excused if challenged for cause.

In addition to the assignments and propositions heretofore set out and complained of in defendant's motion for new trial, we submit for the careful consideration of this court, that where the jury receive any character of evidence in the absence of the defendant, or where by their acts they make witnesses of themselves, and such evidence or actions of the jury are calculated to injure the rights of appellant, a new trial should be granted.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of thirty-five years, and he appeals.

It appears that, anterior to the homicide, appellant and deceased had been friends.   The homicide occurred at Junction City, in Kimble County, on Monday night, March 28, 1898.   District court was in session at the time, and a number of witnesses from Sutton as well as Kimble County were present in the case of Haley, charged with murder,

the venue of which had been transferred from Sutton to Kimble County. Deceased, John Turman, was deputy sheriff, and had been such for some time.   On Monday night, March 28th, one W. A. Taylor, who was stopping at the hotel of deceased, became acquainted with defendant some time during the evening before the homicide, and invited defendant to take supper with him.   They went in to supper, and sat down at a table where Tom Morse and one Will Haley (son of defendant, Haley, in the murder case pending for trial) were sitting.   Something was said about the Haley case, and defendant immediately remarked that Haley had murdered that boy.   Will Haley made some reply, and the parties got into a quarrel, and defendant denounced Haley as a God damn son of a bitch.   Haley got up, and left the dining-room. Defendant continued his denunciations and abuse; and deceased, who was the proprietor of the hotel, as well as a deputy sheriff, came from the kitchen adjoining into the dining-room, and told him it was his house, and asked him to desist.   Appellant continued cursing and abusing.   He finally said he would leave the house, and he and his companion, Taylor, got up and walked out through the hall, got their hats, the defendant still cursing in regard to the Haley matter.   Turman followed on after him, and finally told him that he would have to arrest him, and called on Trimble, one of the parties present, to help him. They followed on, according to the State's theory, to the gate, which was a short distance from the house, endeavoring to arrest defendant. About the time appellant got through the gate, deceased and Trimble took hold of him, or attempted to do so.   He jerked away from them, or evaded them, and immediately the shooting began.   Six shots were fired in all,—four by appellant, and two by deceased.   After appellant left, deceased was found to be shot in three places in the arm, and once through the body; all the shots entering on his right side, below the left nipple, ranging downward, and coming out on his left side.   There was also some testimony that a spent ball struck the body of the deceased on the right side.   The night was dark and misty; and only two or three witnesses appear to have been immediately at the scene, and testified as to the movements of the parties during the conflict. A number of others testified as to flashes coming from the pistols, seen by them from where they stood, as indicating who may have fired the first shot.   The theory relied on by the State was that deceased was a deputy sheriff, and that defendant knew he was such deputy, and that the killing occurred in the endeavor by deceased to arrest defendant for a disturbance of the peace in his (deceased's) house, which was resisted by defendant.   The theory of defendant was that no effort was made on the part of deceased to arrest him; that, when he was required to leave the house of deceased, he did so; that deceased followed him out, and, after he had passed through the gate of the fence surrounding the hotel, deceased assaulted him, and shot at him with a pistol; and he then drew his pistol, and shot at deceased in order to prevent deceased from killing him.

Appellant complains of the action of the court in refusing to change the venue, and certain other matters connected with the application to change the venue. Neither the motion nor the testimony with reference to changing the venue is before us, and we can not notice this assignment.

Appellant insists that the court erred in forcing him into trial, over his objections, before case No. 653 (the State against A. W. Haley), which was regularly on the docket of the court, was disposed of in a lawful manner, and in accordance with the rules of practice, and said case No. 653 having precedence on the docket to this case against defendant. It appears from the record that the case against A. W. Haley, on change of venue from Sutton County, had already been set for trial for Monday, April 4, 1898, when the killing of deceased, Turman, in this case, occurred,—on the 28th of March. On the 29th of March, the day following, an indictment was preferred against defendant Hardin, and the district attorney immediately displaced and continued the case against Haley, and set down said case of Hardin for trial on Monday, April 4th, stating that the latter case was of more importance to the people of Kimble County than the former, and that there did not remain sufficient length of the term of the court to dispose of both of said cases. We have a statute requiring the clerk to place the file number on each indictment returned into court in the order in which they are presented, and to docket the same; also regulating the service of copies of indictment; and in capital cases the court is authorized to set the same down for trial on some particular day; and requiring the court to have drawn and issued a special venire in each capital case. We know of no authority that would require the court, in setting capital cases, to set them according to their file numbers; that is, set those which have the earliest file number first. These matters seem to be left to the discretion of the trial judge. In calling the docket, cases have to be set or disposed of as they may be reached. As stated above, the Haley case had already been set. The court appears, of his own motion, with the consent of the district attorney, to have continued the same for the term. This was not objected to by the defendant in that case, and we know of no statute or rule that would authorize the defendant in one case to take advantage of the action of the court in continuing another case.

Appellant made a lengthy application for continuance, on account of the absence of certain witnesses. The application for continuance was predicated on the absence of the following witnesses, to wit: B. R. Packard, Toney Crowell, and Joe Blakey, Sr., who reside in Ellis County; Lige Kone, Henry Baker, Berry Baker, Ben Robinson, Oscar Roundtree, John Driver, Jessie Mayfield, and Jim Alford, who reside in Sutton County; S. Looney, who resides in Eastland County; and Marian Adams, George Grimes, Jim Taylor, Tom Phillips, Sam Harvey, D. Whetstone, and Jim Davis, residents of Kimble County. We would observe here that Marian Adams and George Grimes were present and

testified; so they are eliminated from this application. Appellant, as stated before, was indicted on the 29th of March, 1898. On the 31st of March he secured counsel, and his case was immediately set for trial on the 4th of April. On the 31st of March, process was issued for all of said witnesses, except S. Looney, for whom process was applied for on the 2d of April to Eastland County, but the court refused to issue same; and also Berry Baker, Robinson, Roundtree, Driver, Mayfield, and Alford, for whom process was applied on the 4th of April. Appellant explains diligence as follows: That he was immediately arrested on the commission of the homicide, and was thereafter confined in jail; that he had no means to secure counsel, and no opportunity to ascertain who the witnesses were, or what he could prove by them; that on March 31st, through friends, he secured counsel, and immediately, as fast as he could learn the names of the witnesses who were present who knew anything of the case, he applied for process for them. Under the circumstances, it occurs to us that this was the use of reasonable diligence. The homicide occurred at night. As stated, appellant was immediately arrested and confined in jail, and his opportunity for ascertaining who may have witnessed the difficulty, or any part of it, or knew anything about it, was very much circumscribed on account of this fact; and in addition to this he did not have the benefit of counsel until March 31st, and process for a majority of the witnesses was issued on that day, and thereafter he had process for others issued as fast as he ascertained their names and what could be proved by them.

As to the three Ellis County witnesses, we are inclined to doubt their materiality. These were character witnesses, who lived in a distant county. Appellant had not lived in said county of Ellis for two years, but during said time had been a resident of Kimble County; had lived both in the country and in town in said last-mentioned county; and it occurs to us that, after such a lapse of time, he certainly could have procured witnesses as to his character in Kimble County.

By the witnesses Berry Baker, Ben Robinson, John Driver, Oscar Roundtree, Jessie Mayfield, and Jim Alford, defendant stated that he expected to prove that they were in attendance upon the District Court of Kimble County as witnesses in the case of the State against A. W. Haley, on the night of the difficulty between defendant and deceased, and that they were witnesses to the firing which occurred between defendant and deceased; and defendant expects to prove by said witnesses that deceased fired the first shot, before the defendant fired at the deceased. Of course, every case is governed by its own facts as to materiality of testimony; and, while we can not regard the testimony of witnesses as to which of two respective parties may have fired the first shot (judging from the flash of the pistols, and the positions afterwards shown to have been occupied by said parties) as entitled to much weight ordinarily, yet in this case, in connection with the other circumstances, we can not say that such testimony would be entitled to no consideration. On the defendant's theory, it is a very material fact if it can be

shown by him that the deceased fired the first shot; and he ought to be entitled to every circumstance that would tend to show that deceased fired the first shot.

We also think the testimony of witness Looney was material. Appellant shows that he expected to prove by him that no arrest was attempted to be made by deceased. We presume the court must have refused to authorize process for him, because he believed it was then too late to procure his attendance at the trial. But if appellant was diligent in ascertaining his testimony, and procured process for him at the earliest time, it afforded a sufficient reason for a continuance.

We also believe that the testimony of Kone and Berry Baker was material, as stated in appellant's application. He proposed to show by them that no attempt was made to arrest defendant, but that deceased followed him out of the house and through the gate, then assaulted defendant, and fired the first shot at him.

In connection with this application for continuance, appellant also objected to certain proof offered by the State to the effect that certain of said witnesses were not present, and could not have seen or heard what it is alleged in the application it was expected to be proved by them that they did see and hear. It seems that this testimony was submitted on the trial for the purpose of meeting the allegations of the application for continuance, and for no other purpose pertaining to the trial. We do not believe this is a proper practice. In the motion for new trial, it might be proper then to show the improbability of the truth of said application by affidavits showing that said witnesses were not present as stated in the application; and certainly it would be competent to produce the affidavits of the witnesses themselves, showing that they would not testify what it was alleged they would. We would suggest here that legislation on this subject would be very appropriate. If, after the trial, process were authorized for absent witnesses, and their affidavits secured, proving the application, it would greatly strengthen it; and if, on the other hand, they disprove it, the court would not be left to speculate on the probable truth of the matters alleged in the application. We believe a statute on this subject would prove very efficacious in the administration of the criminal law. As before stated, however, the admission of such testimony on the trial was not upon any issue before the court, and was calculated to prove injurious to appellant.

We do not believe the court erred in holding the jurors Graham, Prentice, Patterson, and McWhorter were competent jurors. They were not witnesses in the case, but merely on the question of a change of venue, some of them on behalf of appellant.

Nor do we believe the court erred in admitting testimony as to what was done or said by appellant while in the dining-room and in the hotel. It was a part of the res gestae of the case; and, though deceased was not present all the time, yet he was in an adjoining room, and must have heard all that occurred. The conduct of the parties on that occasion, while in the dining-room, was a part and parcel of the same cause. As

shown by the State, it was very turbulent and violent, was a disturbance of the peace, and authorized deceased, not only to make him leave his house, but to arrest him, the deceased being an officer.

Appellant objected to parol proof of the official character of the deceased. The court properly overruled this objection. See Woodson v. State, 24 Texas Crim. App., 153. This is not like the case of Huff v. State, 23 Texas Criminal Appeals, 291, where the official character of the officer was directly in issue.

There was no error in permitting the witnesses Holman and W. W. Taylor to testify as to what defendant told them while they were endeavoring to arrest him. They never did arrest him. He refused to surrender to them, and finally agreed to go along with them, provided Holman put up his pistol. After he had gone some distance, he then refused to go any further, and left them; nor did he surrender until he met the sheriff afterwards. This testimony was entirely competent both as to his statements and his conduct, for his conduct in this respect in refusing to be arrested sheds light upon the transaction in which he killed Turman.

Appellant reserved the following bill of exceptions: "Be it remembered that upon the trial of the above entitled and numbered cause, the State's witnesses Dr. King and Dr. Burt were permitted to testify, over defendant's objection, that if a person had been holding a pistol in the ordinary manner that pistols were generally held, and was holding the same with the right hand, with the entire hand grasped upon the handle of the pistol, that there could not have been a wound inflicted on the little finger and through the hand, as the wound inflicted on deceased, without the ball having made some mark or sign on the handle of the pistol; to all of which testimony defendant objected, because the same was a hypothetical question, based upon facts not in evidence, and because no evidence had been introduced showing in what position deceased held his pistol at the time of the difficulty, and because it is not shown in which hand deceased held his pistol at that time, and because said testimony was irrelevant and of a character calculated to injure the rights of defendant; which said objection of defendant was by the court overruled, and said testimony allowed to go to the jury; to which said ruling of the court the defendant, by counsel, in open court, then and there excepted, and here tenders this his bill of exceptions. * * * Allowed, with explanation that Sheriff Jones had already testified that deceased always carried his pistol on his right side, and, at the time Drs. King and Burt testified, it had been shown that, in the fight between defendant and deceased, from five to seven shots had been fired, and that two of them had been fired by deceased." The matter presented in the above bill was very thoroughly discussed in Cooper v. State, 23 Texas, 331. The general rule deduced from the authorities, and adopted in said opinion, is to the effect that, "on questions of science, or skill, or trade, persons of skill in these particular departments are allowed to give their opinions in evidence; but the rule is confined to cases in

which, from the very nature of the subject, facts disconnected from such opinions can not be so presented to a jury as to enable them to pass upon the question with the requisite knowledge and judgment." And again: "The general distinction is that the jury must judge of the evidence for themselves, but that, wherever the question depends on the exercise of peculiar skill and knowledge that may be made available, it is not a decision by the witness on a fact, to the exclusion of the jury, but the establishment of a new fact, relation, or connection, which would otherwise remain unproved." Judge Bell, after quoting as above, uses this language: "An examination of the cases in which the opinions of witnesses have been admitted in evidence will show that in every well-considered case, and in the decisions of all courts of high authority, the principles asserted in the foregoing quotations have been adhered to with much fidelity. Where the question is purely one of skill or of science, the skillful or scientific witness gives his opinion,—not a mere speculative opinion, but an opinion which, in some cases, may amount to absolute or certain knowledge; in other cases, is knowledge not amounting to absolute certainty, but supported by facts, by observation, by knowledge of the properties of things, of the effects of one thing upon another, of the relations of things, by the known and established laws of physics, or the like. There are also cases where the question is not one of science or skill in which witnesses are permitted to express their opinions; and in these cases the witnesses need not be men of skill or science. In these cases, too, the opinion given is not a speculative opinion, but is knowledge which may amount to certainty, or may not." The case of Cooper v. State, above cited, was one in which expert or opinion evidence was admitted to the effect that the person who shot Fortson (the deceased in that case) must have been on an elevation, or, at least, as high or higher than Fortson, who was shown to have been on horseback at the time. Witnesses—some of whom were shown to be physicians, and others not—were permitted to give their opinions on this matter, to the effect that the person doing the shooting was in an elevated position, or at least as high as the deceased, at the time of the shooting. The object of this expert evidence was to controvert the statement of Cooper, who, shortly after the shooting, declared how it occurred. The court held in that case that such testimony was not a matter of science or skill, but involved facts about which the jury were as competent to judge as any other person could be. We think that the same rule is applicable to this case. In the first place, the bill merely shows, or, rather, calls, King and Burt, doctors; and does not show them to have been experts in the matter of the using of firearms, or the course of balls after entering the human body. But more than this; was it a matter about which any expert could testify? It is alleged in the bill that these witnesses were permitted to state, "if a person had been holding a pistol in the ordinary manner that pistols are generally held, and was holding the same with the right hand, with the entire hand grasped upon the handle of the pistol, that there could not have been a wound

inflicted on the little finger and through the hand, as the wound inflicted on deceased, without the ball having made some mark or sign on the handle of the pistol." From this statement we do not see how anyone, however skilled as a surgeon or in the use of firearms, could tell what course or direction the ball may have taken after entering the hand. We have not the direction from which the ball was fired, nor what part of the hand it entered, nor the direction it took through the hand and finger. It is stated in the bill that if the pistol had been held in the ordinary manner in the right hand, grasped upon the handle, considering the wound through the hand and finger, if the person at the time was so holding the pistol, there would necessarily have been some mark or sign of the ball on the handle of the pistol. We are not informed, however, that the pistol in question was held by appellant at the time as persons ordinarily hold pistols. We take it that on proof of the fact how deceased, in firing, held the handle of his pistol, and further proof of the wound itself in the hand, its character and course, the jury would have been as competent to determine whether or not a mark or sign would have been left on the handle of the pistol by the ball which entered the hand of the deceased as any expert would have been; in other words, that this is not a matter for expert testimony, but the facts should have been proved, and the jury left to form their own opinion. That this testimony was material can not be denied. Appellant's theory was—and his testimony tended to prove it—that deceased himself brought on the conflict, and fired the first shot; that appellant, after the first or second shot of deceased, then began firing, and fired four shots in rapid succession. When defendant fell, four shots were found in his right arm, one going through the hand, and breaking the little finger, and another mortal shot through the body. Now, it was consistent with appellant's line of defense that he shot at deceased while deceased had his pistol in his hand, and had fired at him, or was in the act of firing at him. To cut off this idea, the State was permitted to introduce expert testimony to the effect that the wound in the hand could not have been inflicted while deceased was holding his pistol; that that wound must have been inflicted before deceased drew his pistol and began firing. So, it would seem this illegal expert testimony was made to explain a material fact which went to the jury. In our opinion, this evidence should not have been admitted. See Cooper v. State, supra; Navarro v. State 24 Texas Crim. App., 378; Coyle v. State, 31 Texas Crim. Rep., 604; Champ v. State, 32 Texas Crim. Rep., 87; Turner v. Strange, 56 Texas, 141.

Paragraphs 28 and 29 of the court's charge attempted to present the question of the authority of Turman, the deceased, a deputy sheriff, to arrest defendant for disturbing the peace in his house on the occasion of the homicide, and the right and authority of the sheriff in making the arrest, and the right of defendant as to self-defense in connection with the attempted arrest. The evidence certainly raised this issue, and it was the duty of the court to have given a full and clear charge

on this subject. We do not believe the charge in question did this. Nothing is said in the charge as to resistance by appellant of a lawful arrest attempted to be executed in a lawful manner. The charge simply instructs the jury, if appellant attempted to arrest said defendant for such offense, and in such attempted arrest a conflict ensued between defendant and Turman, etc. Now, this charge should have certainly stated the conditions which brought about said conflict. If deceased was attempting an arrest of defendant in a lawful manner,—that is, without the use of more force than was reasonably necessary for that purpose,—and appellant resisted the arrest, drew a pistol to prevent being arrested, and fired at the officer, then he could not set up self-defense. Tiner v. State, 44 Texas, 128. If, on the other hand, appellant did not resist the officer, but was merely attempting to escape or evade an arrest, then the officer had no right to kill him; and if, under such circumstances, deceased first drew his pistol and shot at appellant to kill him to prevent his escape, the officer had no right to do this; and in such case appellant's right of self-defense would be perfect. This latter phase of the case was not given to the jury at all, and yet there is some testimony tending to raise this phase of the case. True, appellant and his witnesses say that no attempt was made to arrest him whatever; still the State's witnesses testified that the attempt was made by deceased to arrest appellant. The jury may not have believed either theory entirely. They may have believed the State's witnesses to the effect that deceased attempted to arrest defendant, and that appellant attempted to escape in the darkness; that deceased fired on him, and appellant returned the fire, and thus killed the officer. The court should have given an instruction on this view of the case. Of course, the court should have given an instruction presenting appellant's theory alone, to the effect that no arrest was attempted, and that deceased made the first assault on him. The court, in paragraph 29 of the charge, gave a charge predicated on the use of more force on the part of the deceased than was reasonably necessary to effect the arrest. This charge does not mention the essential elements of resistance, but merely states that if appellant "had committed the offense of disturbing the peace, and deceased, as an officer, was attempting his arrest, and was using greater force than under the circumstances was necessary to secure his arrest and detention, and the conflict ensued between said defendant and said Turman," etc. This charge appears to assume that defendant resisted the arrest, and that deceased had to use force to secure his arrest. This charge should have embodied the element of resistance on the part of defendant, and left it as a fact for the jury to find; that is, the court should have told the jury substantially that if deceased was attempting to arrest appellant in a lawful manner, and appellant resisted such arrest, and deceased then used more force than was reasonably necessary to secure his arrest and detention, appellant would have the right to resist such excessive force, and, if he killed him under such circumstances, it might be manslaughter (Meuly v. State, 26 Texas Criminal Appeals,

274); on the contrary, if he did not use more force than was reasonably necessary to secure the arrest and detention of appellant, and appellant assaulted deceased with a pistol to prevent his arrest, and shot and killed deceased, then it might be murder. We do not intend to intimate our view as to the facts raising these issues; but, where the evidence suggests a theory of defense, this theory should be properly presented in the charge of the court, no matter what the opinion of the court may be as to the weakness or strength of the evidence.

Appellant complains of the refusal of the court to grant a new trial based on the alleged ground of misconduct of the jury. The application, which was sworn to by appellant, shows that the jury took their meals at the hotel near which the homicide occurred, and that, in going to their meals, they passed by the place where it is said to have occurred. One of the jurors stepped the distance from the gate to where one of the defendant's witnesses stood, said witness having testified as to seeing flashes from the pistols. And one of the jurors, in the presence of others, appears to have taken some measurements of the hole of a bullet on the wall across the square from where the shooting occurred. Three of the jurors were examined by the court on this matter, but the other nine do not appear to have been accessible during the remainder of that term of court. The testimony of these jurors would indicate that the view taken by the jury was not of a character to have affected their finding. In the state of this record, we can not say that this matter would constitute reversible error; still it should be the duty of the court below, as far as practicable, to avoid allowing the jury to go upon the ground where an offense of this character is shown to have occurred. When conditions are such as that this is not practicable, the jury and officers should be admonished by the court with reference to their conduct when necessarily compelled to visit the place where the homicide may have occurred.

For the errors discussed, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*

DAVIDSON, Presiding Judge, absent.