## Joe Bug Roquemore v. The State.

### No. 4137.   Decided November 25, 1908.

**1.—Murder—Continuance—Question of Fact.**

Where upon trial for murder, the application for continuance showed proper diligence and the record did not suggest that the witnesses were absent by the procurement or consent of the defendant, it was error on a contest of said motion to permit the State to contradict the testimony of said absent witnesses by introducing witnesses for that purpose upon which the court

based a conclusion that said absent testimony was probably untrue; this was a question for the jury and the continuance should have been granted.

**2.—Same—Continuance—First Application.**

Where upon trial for murder the State's theory was that the defendant shot deceased without legal provocation as he was about to enter a railway train, the court erred in not granting a first motion for continuance in which the defendant alleged that he expected to prove by the testimony of the absent witnesses that shortly before the homicide an altercation occurred between defendant and deceased in which deceased drew a knife, and when he left, said he would see defendant later, and that at the time defendant fired upon deceased the latter came rushing up with others as the defendant was boarding the train and deceased had a pistol, and that some one hollered "Look out they are going to shoot," and defendant fired, etc., this testimony being material and defendant having shown diligence to procure the same.

**3.—Same—Charge of Court—Adequate Cause.**

See opinion for charge of court in submitting the law of manslaughter and adequate cause.

**4.—Same—Charge of Court—Too Restrictive—Defendant's Standpoint.**

Where upon trial for murder there was evidence as to a former altercation some time before the homicide between the defendant and the deceased, the court erred in instructing the jury that they could look to such previous altercations as an incident to illustrate and throw light upon the motives, meaning, intent and purposes with which the parties acted in the alleged fatal meeting, as the defendant could not be bound by the intentions of the deceased, but had the right to act upon apparent danger from his standpoint.

Appeal from the District Court of Angelina. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*King & Strong,* for appellant.—On question of continuance: Blackburn v. State, 48 Texas Crim. Rep., 286; 87 S. W. Rep., 692; Weaver v. State, 52 Texas Crim. Rep., 111; 105 S. W. Rep., 189.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—On April 29, 1908, a bill of indictment was returned in the District Court of Angelina County charging appellant with the murder of one Tom Reynolds on the 29th day of March, 1908. The appellant was brought to trial on May 25, 1908, which resulted in his conviction of murder in the second degree with a penalty of five years in the penitentiary.

1. When the case was called for trial, the appellant made his first application for a continuance for the want of the testimony of Jim Bowling, Bud Weaver, Florence Davis, Dr. Adams and Bob Weaver; that the witness Bowling resided in Shelby County, Bud Weaver and Florence Davis resided in Nacogdoches County, and Dr. Adams resided in Harris County, Texas. The application for a continuance was overruled and the appellant placed on trial. By proper

bill of exceptions this application is before this court. The State contested said application, not on the ground of want of diligence, but on the ground that the testimony of said witnesses is not probably true and that the witness, Jim Bowling, was a transient person with no local habitation; that the witness Bud Weaver is a fugitive from justice, being under indictment for misdemeanor violations of the law; that the witness Florence Davis is a negro woman of lewd character and had been convicted as a prostitute and vagrant. On the trial of this contest the State, over the objections of appellant, offered testimony as to statements made to them by these witnesses contradictory to the facts set up by appellant in his motion for a continuance. The court in passing on the bill of exceptions overruled the motion on the ground that the testimony of these witnesses was not probably true, and would not change the result of the trial, and, second, the court was of the opinion that the witnesses Bud Weaver, Jim Bowling and Florence Davis were absent by the procurement of the defendant. We have examined the testimony that was offered on the motion for a new trial and we are unable to discover anything that suggests that the witnesses were absent by the procurement or consent of the appellant. The second ground of the motion that the testimony was not probably true, we can only look to the record to determine upon what ground the Judge predicated this finding, and when we examine the evidence that is offered, we find that the State offered certain witnesses to prove by them that the witnesses Weaver, Davis and Bowling made statements to them that would contradict what the appellant set up in his application for a continuance that he could prove by them. We are of opinion that the court would not be authorized in passing upon an application for continuance, to pass upon the truth of what a witness would testify to on the trial by proving contradictory statements by witnesses. The law in Texas has wisely left the trial of all issues of fact as well as the credibility of witnesses to a jury and this court is of opinion that this province of the jury can not be invaded by the court and would be establishing a precedent that would ultimately result in confusion and a state of affairs that could not be easily remedied. The application for continuance, we think, shows proper diligence. We are also of the opinion that the testimony was material and that the court erred in not granting the application for continuance.

The facts show that the killing occurred at a siding called Angelina, in Angelina County, situated on the Houston, East & West Railroad; that there was but one building there and the appellant and Bud Weaver, and Murphy were in the back room in this saloon in the bedroom; that about 11:30 that night the deceased Reynolds in company with one Parrot and Devereaux, came up to the house; they called for water, Murphy handed them a drink of water out of the window; they said they wanted to come in the house and get some

whisky; there was considerable controversy as to whether they were quarreling with one another or not. Anyhow, they were let in the house. The State's witness, Parrot, says that Roquemore, the appellant, said to Reynolds, "put up that knife," and shot. When the deceased, Parrot and Devereaux ran out of the house and shortly after they left that Roquemore started over to the train to board it to go back to Nacogdoches. Florence Davis and another negro woman were also in the house at the time of the difficulty. When the appellant started to board the train, the deceased in company with Parrot and Devereaux, approached the train from the opposite side of the track, when the appellant fired and shot Reynolds. Now, appellant proposed to prove by the witnesses Weaver and Florence Davis that when the deceased came into the store that night, he came in with a knife in his hand and acted in a hostile manner, and was making an assault upon the appellant or threatening to make an assault upon him with a deadly weapon and that when appellant fired they ran out of the house and remarked, "We will see you later." And that in about twenty minutes after they left the house the appellant and Weaver and the absent witness Murphy went to the train and just as the appellant stepped up on the steps, the deceased in company with Parrot and Devereaux, came rushing up from the opposite side and that Reynolds had a pistol and that he, Murphy, hollered to the appellant "Look out, they are going to shoot," when the appellant fired. Appellant proved by other testimony that after the appellant shot he ran back through the train, hollering to the people to drop down or they would get shot. Now, the State's contention is and was at the trial of the case that the deceased had no knife when he went into the house; that his mission was peaceful and the appellant shot at him without excuse and that the killing at the train was uncalled for and was a clear case of murder. The appellant's theory was self-defense and that he could prove this by Murphy, Florence Davis and Bud Weaver. He also proposed to prove by Jim Bowling that he was present and saw all of the difficulty, and that he could prove by said Bowling that when the deceased wanted to get into the room, the appellant objected, the deceased cursed and abused the appellant and threatened to break into the room and that he would kill every damn son-of-a-bitch in there and the deceased broke out the window of the room, and broke the glass in the window; and said he was coming in anyhow, and that he, Bowling, went to the door and opened it when the deceased rushed into the room with an open knife and started upon the appellant, when appellant shot at him. He expected to prove substantially the same facts by the witnesses Weaver and Florence Davis. This is a sufficient statement of the facts in the motion for a continuance to show the materiality of the testimony. Where the testimony is material and appellant has shown diligence to procure the same, it is error to overrule a first application for a continuance. We are, therefore,

of the opinion that the case must be reversed because the court erred in refusing to continue the case.

2.    Appellant also complains that the court erred in his charge to the jury in failing to submit the issue of adequate cause on what transpired at the train at the time of the shooting.  The court had already directed the jury, that if the conduct of the deceased at the house where the deceased went was such as to arouse such a degree of anger, rage, sudden resentment or terror, as to render his mind incapable of cool reflection and sufficient time had not elapsed for said passion to subside and the killing took place, then the killing would be of no higher grade than manslaughter.  The court did in his general charge submit to the jury, manslaughter, and told the jury they had a right to consider the surroundings at the time of the killing to determine whether the appellant's mind was aroused to such a degree of anger, rage, sudden resentment or terror, as to render it incapable of cool reflection and also in determining this, that he had a right to consider all the facts and circumstances connected with what transpired at the house before the fatal encounter. The following charge is also complained of: "There being evidence tending to show that there had been an altercation or difficulty between defendant and deceased in a room of a house and that this altercation occurred some time before the alleged fatal altercation at the train, it is proper for you to understand and you are so instructed that the defendant is not on trial and can not be convicted for the occurrences at or in said room, but such occurrences and the acts and words of the parties in such previous altercation at the room (if such altercation there was) can be considered by you in so far (if at all) as the same may tend, as an incident or circumstance, to illustrate and throw light upon the motives, meaning, intent and purposes with which the parties acted in the alleged fatal meeting at the train and the state of defendant's mind at said latter time." The objection to this charge is, as made by appellant, that the latter part of the same was a charge upon the weight of the testimony, was argumentative and was restrictive of appellant's rights.  We think that wherein the court instructed the jury that they might look to the previous altercation in the room to be considered by them as a circumstance or incident to illustrate and throw light upon the motive, meaning, intent, and purposes with which the party acted in the alleged fatal meeting is subject to just complaint.  As to what was the motives and intentions of the deceased, the appellant could not be bound thereby.  The law has said that the defendant has a right to act upon the reasonable appearance of danger and the matter must be viewed from his standpoint.  The intentions and motives of the deceased, may have been innocent, and he may have intended no wrong, yet, the appellant would not be bound by his secret intentions, but had a right to act upon the conduct of the deceased as it appeared to him.  We think, therefore, that the charge

was too restrictive in that portion of the same that tells the jury that they might view the incidents and circumstances at the house to throw light upon the motives, meaning, intent with which the parties acted in the alleged fatal meeting. The conduct of the parties at the house, the jury had a right to consider, and it was the province of the court to direct them that they could consider the same as far as it may have thrown light upon the motives and intent of the appellant at the fatal encounter, and in this respect the court's charge was erroneous. We are of opinion that the charge of the court as a whole was a fair presentation of the law with the exception of the latter portion of the paragraph above quoted.

The other errors complained of need not be noticed as they are not likely to occur upon another trial of this case. For the errors above indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*