ED STEEL v. THE STATE.

No. 4507. Decided January 20, 1909.

Rehearing Denied March 20, 1909.

**1.—Assault to Murder—Practice on Appeal—Bill of Exceptions—Continuance.**

Where upon an appeal from a conviction of assault to murder, the application for continuance was not embodied in the bill of exceptions nor did the bill state the substance of the application, or refer to it in any other way except in general terms, but there was only one application for continuance in the case, the bill of exceptions was sufficient and will be considered.

**2.—Same—Continuance—Motion for New Trial—Affidavit—Contest.**

Where the motion for new trial objected to the court's action in overruling defendant's application for continuance, and the motion was contested by the State by affidavits of witnesses that the absent witness would not have testified to the facts stated in the application for continuance; and it appeared that the affidavit of the absent witness was not procured, or that any effort was made to do so, and the overwhelming weight of the testimony showed that the absent witness would not give the testimony expected, there was no error in overruling the motion, although it appeared on the face of the motion that the testimony was material.

Appeal from the District Court of Bosque. Tried below before the Hon. O. L. Lockett.

Appeal from a conviction of assault to murder; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*J. P. Word,* for appellant.—On question of refusing continuance: Miller v. State, 18 Texas Crim. App., 232; Gilcrease v. State, 33 Texas Crim. Rep., 619, 28 S. W. Rep., 531, and cases cited in the opinion.

*F. J. McCord,* Assistant Attorney-General, and *E. B. Robertson,* County Attorney, for the State.

RAMSEY, Judge.—Appellant was charged in the District Court of Bosque County, Texas, with the offense of assault with intent to murder one Henry Gray. On trial he was convicted and his punishment assessed at confinement in the penitentiary for three years. Thereupon he appealed to this court, and submits in effect one proposition and assigns one error on which a reversal is sought. That error is to the effect, in substance, that the court erred in overruling his application for a continuance.

The indictment in the case was returned into court on the 25th day of March, 1908. On the 21st day of September, 1908, the appellant filed his first application for a continuance for want of the testimony of one Bettie McLennan, who was alleged to reside in Bosque County. The diligence used to obtain the attendance of this witness is sufficient. The facts which it was stated in the application were expected to be proved by said witness are as follows: "That she is well acquainted with the defendant and also with the prosecuting witness in this case, Henry Gray; and knew him well on March 4, 1908, and that on or about said date she was living in about 150 yards from the home of defendant, in plain view of defendant's house, and that she was at home on the day that Henry Gray will claim that Ed Steel, the defendant, shot him, and that it was about the middle of the afternoon of March 6, 1908. She saw Henry Gray on the inside of the defendant's yard with a gun in his hands pointed towards the front door of the defendant's house, and had gone from his buggy on into said yard, some eight or ten yards; and that Gray had his gun pointed towards defendant's door in a shooting position all the time while he was advancing towards defendant's house; and she saw Ed Steel making motions with his hands towards the said Henry Gray, and heard defendant telling the said Henry Gray not to come any further, but to go back—he didn't want to hurt him; and about this time she heard a shot but could not tell who shot it." This testimony was alleged to be material, and was material in this, that the assaulted party, Gray, testified, in substance, that he was not out of his buggy when he was shot, but was sitting in his buggy waiting for the appellant to go to his house and get some money that Gray claimed he owed him; and that he, Gray, had no gun when he was shot. The appellant in his testimony stated, in substance, that Gray was approaching him in a threatening and menacing attitude, and was in the act of firing

upon him when he shot. So there can be no substantial room for doubt or controversy that this testimony, if same could have been produced, and if the witness would have so testified, was of the highest importance. The State objects to a consideration of this assignment, on the ground, as claimed, that the matter is not presented by proper bill of exceptions. There is a bill of exceptions which states merely that the court erred in not granting appellant's first application for a continuance. The application for continuance is not embodied in the bill of exceptions, nor does the bill state the substance of the application, or refer to it in any other way except in general terms. The bill is not prepared in such form as we think is best always to be done, but as there was one application for continuance only, we think the general reference to it in the bill is such that we must consider the question.

The application for a continuance being overruled, and after conviction appellant filed his motion for a new trial, in which, among other things, the action of the court in overruling his application for a continuance was urged. This motion was contested by the State, and it was urged as a ground why said motion should be overruled that the missing witness, Bettie McLennan, if present would not have testified to the facts stated in the application for a continuance, but on the contrary would have testified that she was in her house at the time of the difficulty between appellant and Gray; that she heard the report of a gun but saw no part of the difficulty, or either of the participants until after the difficulty had ended. It was likewise stated in said contest of the motion that she had repeatedly stated that this was the substance of all she knew about the matter as will appear from the affidavits of said witnesses named in the contest, all of whom it was alleged were credible persons, and all of whom enjoyed, in their several vicinities, the reputation of being good citizens and reliable persons. Attached to this motion was the affidavit, among others, of D. W. Gray, father of Henry Gray, the assaulted party, who deposes, that in company with James Rogers and John Cappes, he talked with the missing witness, and that she stated that she did not know anything about the difficulty, and did not see any part of it; that she was in her house at the time and heard two shots fired in the direction of appellant's house, and that when she looked up that way she saw Henry Gray in the public road walking and leading his horse down said road to her house, and that she saw neither Gray nor Steel at the time of, or immediately before, the shooting took place, and that this was all she knew about it. Affidavits to the same effect, substantially, were made by James Rogers, Charlie Romine, J. F. Cappes, H. J. Gibbs and J. L. Downing. In the order of the court overruling the motion for a new trial it is recited that the court heard said motion and the contest thereof by the State read, and the evidence thereon submitted. What this evidence was is not shown by the record,

and the presumption is that it was such as justified the action of the court.

A question similar to this has been before this court not infrequently, and usually we have held adversely to the State; but as will be seen by an inspection of the opinions in the several cases, every decision has to some extent been based upon the particular facts of the case. In the case of Lane v. State, 28 S. W. Rep., 202, this matter came before the court, and in referring to it, this language was used: "Appellant contends that the court erred in permitting affidavits to be filed by the State contesting, not the diligence, but the fact that the absent witness would testify as stated in the motion for a continuance. It is true the statute permits only the question of diligence to be controverted, and the court erred in permitting the affidavits complained of to be filed; but we see no reason to reverse this cause for this error, because the testimony of the absent witness, if indeed he would have testified as stated, would have been simply defendant's explanation to the effect that the stolen property, 154 pounds of bacon, found buried in his garden, was placed there with his consent by two parties." Again, the court say: "We can see no reason to disturb the verdict upon the ground stated, overruling the motion for a continuance. It is not such exculpatory evidence as would probably affect the result of the trial in any way." Inasmuch as the court determines in this case that the testimony produced would not have affected the result, it was unnecessary for the court to determine the question as to whether it was permissible to file the affidavits referred to. Nor can we say to what extent this case is an authority applicable to the case at bar, for the reason that the nature and contents of the affidavits are not set out. In the case of Attaway v. State, 31 Texas Crim. Rep., 475, it is held that the materiality and truthfulness of the alleged absent testimony often become very important in considering the motion for a new trial, based upon the action of the court in overruling an application for continuance. In a contest over the motion for continuance, the statute authorizes affidavits controverting diligence, but does not permit an inquiry into the truthfulness or materiality of the absent testimony. Code Crim. Procedure, arts. 564, 565. But when the new trial is sought because of the supposed error of the court in overruling such application, the materiality and truthfulness of such absent testimony may become matters of first importance, and we see no valid reason why the State should not be permitted to contest these questions. Willson's Crim. Stats., secs. 2553, 2554.

In Roquemore v. State, 54 Texas Crim. Rep., 592, 114 S. W., 140, we had before us a question very similar to the one here under discussion. In that case the State resisted the appellant's application on the ground that the missing witness had made statements contradictory to those to which it was claimed she would testify. Dis-

cussing this matter, we say: "The second ground of the motion, that the testimony was not probably true, we can only look to the record to determine upon what ground the judge predicated this finding; and when we examine the evidence that is offered, we find that the State offered certain witnesses to prove by them that the witnesses Weaver, Davis and Bowling made statements to them what would contradict what the appellant set up in his application for a continuance that he could prove by them. We are of opinion that the court would not be authorized, in passing upon an application for a continuance, to pass upon the truth of what a witness would testify to on the trial by proving contradictory statements by witnesses. The law in Texas has wisely left the trial of all issues of fact as well as the credibility of witnesses to a jury, and this court is of opinion that this province of the jury can not be invaded by the court, and would be establishing a precedent that would ultimately result in confusion and a state of affairs that could not be easily remedied." It will be observed, however, that in the case last mentioned, that there was no contention made that the absent witnesses, if present, would not have testified to the facts stated in the application for a continuance; but the motion for continuance was resisted on the ground that these missing witnesses had made statements contradictory to the matters set out in the application for a continuance.

In the case of Hardin v. State, 40 Texas Crim. Rep., 208, 49 S. W. Rep., 607, in discussing this matter the court uses this language: "In connection with this application for continuance, appellant also objected to certain proof offered by the State, to the effect that certain of said witnesses were not present, and could not have seen or heard what it is alleged in the application it was expected to be proved by them that they did see and hear. It seems that this testimony was submitted on the trial for the purpose of meeting the allegations in the application for continuance and for no other purpose pertaining to the trial. We do not believe this is a proper practice. In the motion for new trial it might be proper then to show the improbability of the truth of said application by affidavits showing that said witnesses were not present as stated in the application, and certainly it would be competent to produce the affidavits of the witnesses themselves showing that they would not testify what it was alleged they would. We would suggest here that legislation on this subject would be very appropriate. If, after the trial process were authorized for absent witnesses, and their affidavits secured, proving the application, it would greatly strengthen it; and if, on the other hand, they disprove it, the court would not be left to speculate on the probable truth of the matters alleged in the application."

This case was tried and appellant convicted something like ten days before his motion for new trial was acted upon. The affidavit

of the missing witness was not procured by counsel for the appellant, nor it is shown that any effort was made to procure same, or that it could not be procured. The testimony of these witnesses, six in number, show that, if present, the witness, according to her statement, would not have testified to the facts stated in the application; that she did not see the matters which it is claimed she did see and that if she had given the testimony contained in the affidavits it would have been untrue. While, as stated in the last cited case, the affidavit or testimony of the absent witness would often be more satisfactory as proving the fact as to whether he would give the testimony expected, there is no special virtue or sanctity in the testimony of such a witness and no reason why the same fact could not be proved by other credible persons having information in respect thereto. Again, the record shows that the court investigated this matter. The presumption is that the court acted on sufficient testimony, and his finding should be sustained, if in the light of the entire record, it can in fairness be sustained. Again, in this case appellant testified, and it does not appear from his testimony that this missing witness either saw or heard any part of it. He does not testify to having seen or heard of this witness on the day of the difficulty; nor does the record anywhere show that he (appellant) ever talked with her since the difficulty occurred, or any fact on which he based his statement that she would give the testimony expected from her. Again, it appears from the affidavits of these witnesses that the statements of the missing witness were made very soon after the commission of the alleged offense. And in view of the certainty and particularity of their statements, we are led to the conclusion and are firm in the belief that the witness, if present, would not have testified to the facts claimed, and that if she had so testified, that the facts are not true. In this connection it will be conceded that this practice of filing affidavits contesting the statement as to what the missing witness would testify should not be sustained, except in a case like the present, where the overwhelming weight of the testimony carries certain conviction that the absent witness would not give the testimony expected. When this is done, as in this case, and where we can not doubt as men, we should not falter or hesitate as judges.

Finding no error in the judgment of the court below, it is hereby in all things affirmed.

*Affirmed.*

[Rehearing denied March 20, 1909.—Reporter.]