512 So.2d 1291 (1987)
Danny Ray DAVIS
v.
STATE of Mississippi.
No. DP-69.
Supreme Court of Mississippi.
September 23, 1987.
*1292 Robert G. Gilder, Susan M. Guerieri, Southaven, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., Donald G. Barlow, Felicia C. Adams, Sp. Asst. Attys. Gen., Jackson and Robert L. Williams, Dist. Atty., Hernando, for appellee.
En Banc.
ANDERSON, Justice for the Court:
This is an appeal from the Circuit Court of Tate County, wherein the appellant, Danny Ray Davis, was convicted of capital murder and sentenced to death.
On April 2, 1985, the body of Ralph May, a retired resident of the Arkabutla community in Tate County, was found in a garbage dump near Coldwater. His death was caused by a single .25 caliber gunshot wound to the base of his head. Several passersby had noticed a man fleeing the site in apparent haste on a motorcycle. Investigation placed suspicion upon Danny Ray Davis. Local police, cooperating with the Tate County authorities, arrested Davis at his home in Memphis. Davis' sister turned a .25 pistol over to the police. Tests by the Mississippi Crime Lab established that this weapon had killed Ralph May. A DeSoto County pawnbroker stated that he had sold the gun and ammunition to Davis.
Davis was indicted for capital murder and tried in the Circuit Court of Tate County. The jury found him guilty. In the penalty phase of the bifurcated trial, the jury found the following aggravating circumstances: (1) that the murder was committed during the commission of a crime, to-wit robbery; (2) that the murder was committed in order to prevent or avoid arrest; (3) that the murder was committed for pecuniary gain; (4) that the murder was especially heinous, atrocious or cruel and (5) the defendant had been previously convicted of a felony involving the use or threat of violence. The jury found that these outweighed any mitigating circumstances, and sentenced Danny Ray Davis to death.
We have carefully reviewed the assignments of error. Our discussion below concerns the ones we deem to have merit.
A pretrial motion for a change of venue having been made, the judge duly ordered a hearing. The state produced a number of witnesses attesting their belief that Davis could receive a fair trial in Tate County. After hearing the evidence from both sides, the trial judge announced himself satisfied that Davis could be fairly tried, and denied the defense motion.
One of the witnesses produced by the state at the change-of-venue hearing was Ben Delap, whose testimony would have attracted no particular notice but for an unusual later development: When, some four weeks later, voir dire was commenced for the trial proper, this same Delap was part of the venire. Oddly, neither the defense counsel nor the trial judge remembered him from the pretrial hearing. Delap did not respond to voir dire questioning in such a way as to alarm anyone, and in the end he became a member of the petit jury panel.
Just before the opening statements, defense counsel suddenly realized where he had seen Delap before, whereon he made a motion for a mistrial, which the judge denied. Defense counsel then moved that the juror Delap be stricken and an alternate substituted. This motion was likewise overruled, even though there were three alternate jurors available.
As the state correctly points out, our rule is that failure to object to the jury before it is empaneled waives any right to complain of its composition. Pickett v. State, 443 So.2d 796 (Miss. 1983); Watkins v. State, 262 So.2d 422 (Miss. 1972); Holloway v. State, 242 So.2d 454 (Miss. 1970). Today's unusual circumstances present a compelling case that we recognize an exception to that technical rule. Besides, all that had been done was that the jury had been empaneled and sworn. The trial proper had not yet begun. Furthermore, this record leaves us without doubt that defense counsel acted promptly once he realized that juror Delap had been a witness at the venue hearing.
*1293 Turning to the merits, we accept that in a death penalty case, "we must be vigilant that the jury ... is infected by not the slightest taint or suggestion of bias or unfairness." Fisher v. State, 481 So.2d 203, 216 (Miss. 1985). We find more than a "suggestion" of unfairness in the presence on the jury panel of one who had previously served as a witness for the state in the same case. The unsuitability of such a person for that position is obvious. It gives the whole trial an appearance of impropriety.
The evidence of Davis' guilt was strong. Nevertheless, even an obviously guilty criminal is entitled to a fair trial. Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 755 (1961); Coleman v. Kemp, 778 F.2d 1487, 1541 (11th Cir.1985); Ferguson v. State, 507 So.2d 94, 97 (Miss. 1987). A trial before a jury, one of whose members has been a witness for the prosecution in a pretrial hearing, is by definition, not a fair trial.
There is a second reason for reversal. During the penalty phase of the trial, the defense attempted to introduce as a mitigating circumstance, evidence that Davis' prior conviction for assault had resulted in a prison sentence. The trial judge refused to admit the sentencing order.
The U.S. Constitution requires that defendants be given broad latitude in introducing evidence of mitigating circumstances. In a recent case, the Supreme Court remarked:
The sentencer cannot be precluded from considering as a mitigating factor, any aspect of a defendant's character on record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. McClesky v. Kemp ___ U.S. ___, 107 S.Ct. 1756, 1773, 95 L.Ed.2d 262, 286 (1987), quoting Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973, 990 (1978).
This Court has been similarly soliticous, holding that Mississippi allows "evidence of mitigating circumstances of an unlimited nature." Leatherwood v. State, 435 So.2d 645, 650 (Miss. 1983). The use of such evidence is limited by only one restriction  the evidence must be relevant. Eddings v. Oklahoma, 455 U.S. 104, 112, 102 S.Ct. 869, 875, 71 L.Ed.2d 1, 9 (1982); Washington v. State, 361 So.2d 61, 68 (Miss. 1978).
While it is highly unusual for a defense counsel to cite the existence of another prison sentence as a mitigating factor (indeed, we have never heard of it being done before), we cannot say that it was irrelevant. It appears that the defense was trying to inform the jury that Davis would be subject to severe punishment even without the death penalty. While this argument might not have swayed the jury, we do not feel entitled to say they should not have heard it.
Because of these errors, the case must be reversed and remanded for a new trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
WALKER, C.J., HAWKINS, P.J., and GRIFFIN, J., dissent.
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent.
The majority is reversing this case for two vaporous reasons. I had never heard, until the majority enlightened me, that simply because some citizen of a county, knowing nothing about the parties or the facts of a case, is subpoened as a State witness on a defense motion for a venue change and asked whether the defendant can receive a fair trial in the county, and truthfully states he thinks he can, that this disqualifies him as a prospective juror.
What, I might inquire, disqualifies him? He did not know the victim. He had only heard about the killing the day it happened some six months previous. The facts of the case were not discussed at all in the change of venue hearing.
Then does the fact the State subpoened him make a difference? The sheriff was asked by the district attorney to pick about six people from diverse points of the county *1294 to testify. Ben Delap was one of them. None of these witnesses was interviewed before taking the witness stand, and the district attorney therefore knew nothing about what any would testify. If this disqualifies a citizen otherwise manifestly qualified to serve as a juror, then we have indeed wandered into fairyland.
Ralph May was murdered April 2, 1985. On October 9, 1985, the circuit judge conducted a hearing on a motion for a change of venue filed by defense counsel for Davis. Eleven witnesses testified for the state, five of them county officials, and six picked at random from the county. One of these was Ben Delap.
Delap had lived in Tate County for approximately 20 years. He had been retired since 1981 from the automobile business in Memphis. All Delap knew about the slaying was that on the day May was killed he was stopped on the road where the body was found and asked if he had passed there about the time May was killed. After that he never heard the case discussed by any of the individuals outside his family he conversed with in the interim between the killing and hearing date. In his family the killing had "probably" been mentioned, but none of Delap's family knew the decedent.
He did not know the victim, he had heard nothing about the case, and until he was questioned at the venire hearing he did not even know who was accused of the killing. He testified he probably read something about the killing in the Commercial Appeal, but had no recollection of it. He did not subscribe to the county paper. He had never heard anything about the case on the radio or television. He was asked this question by the district attorney:
Q. Now, it's been alleged that the  by the Defendant that he can't get a fair trial here in Tate County. Do you have an opinion as to whether or not he can get a fair trial here?
A. I'm sure he could get a fair trial here. The people that I know in Tate County are church-going people and I believe they're honest people who would give him a fair trial.
R. 353.
Davis's trial began in Senatobia on November 4, three and one-half weeks later. Delap was one of the jurors subpoenaed to serve on the special venire. The circuit judge questioned the panel, the district attorney questioned the panel at length, and then defense counsel questioned the panel at length, some several hours. There was nothing about Delap's answers which aroused any question in the mind of the trial judge, the district attorney, or defense counsel as to his qualifications. He was not challenged for cause, and he was not challenged peremptorily.
On the evening after the jury was selected, a member of the family told one of the defense counsel that she had seen Delap sitting with the deceased's family on the day of the motion for a change of venue. Defense counsel checked their notes and found, or recalled that Delap had testified on the change of venue hearing.[1]
The following morning defense counsel made a motion for a mistrial, which was overruled, and then following an extended colloquy moved the court to strike Delap as a juror. This also was overruled.
This colloquy developed Delap was (as above noted) a dragnet witness randomly subpoenaed from one of the sections of the county to testify, who the prosecution did not interview before he took the stand.
I concede that perhaps it would have been preferable for the circuit judge to have excused Delap and taken an alternate juror. In fairness to the trial judge, however, it should be pointed out this would not have cured his problem. Delap had already spent the night sequestered with the jury panel, and if the judge had excused *1295 him, we would still have had the argument that he had tainted the jury. Regardless of this, however, we must inquire, what is shown in this record to require reversal?
There is absolutely nothing about any of his testimony at the change of venue hearing which remotely disqualified him as a juror. He was asked similar questions, but much more exhaustively, on voir dire. The record reveals 60 pages voir dire questioning of the jury venire by defense counsel.
The majority is reversing on an "appearance of impropriety," when the record unmistakably shows there was no impropriety. Singer v. State, 109 So.2d 7 (Fla. 1959); State v. Wisdom, 84 Mo. 177 (1884); State v. Morse, 35 S.D. 18, 150 N.W. 293 (1914); Harden v. State, 49 S.W. 607 (Tex. Crim. App. 1899).
On change of venue hearings, it is customary for the State to call at random citizens from various sections of the county who know nothing about the facts of a case, or the family, and ask them whether an accused can receive a fair trial.
It takes a superior imagination to find from this that such a witness cannot objectively and impartially hear the case if he should be subsequently called as a juror.
All Delap knew about this homicide was that on April 2, 1985, as he was driving along a road, he was stopped and asked if he knew anything about May's killing, which had happened on that road. He did not know May, none of his family knew May. He did not know anything about who was accused of the killing. He knew nothing about the case. Some member of his family may very well have made a passing mention of the killing in the next several months, but other than this he heard no more about it until he was called as a witness in the change of venue hearing October 9, 1985.
The second reason the majority is reversing this case is that during the penalty phase the circuit court refused to allow the defense to show that for a previous conviction of deadly assault Davis had been sentenced to twenty years. The jury knew he had been convicted; all they did not know was the sentence.
I will make no further comment on this than to state that in my view it is strange reasoning.
WALKER, C.J., and GRIFFIN, J., join this opinion.
NOTES
[1] One of defense counsel related to the court that a member of the family told her Delap was sitting with the family on the day of the venue change hearing. This obviously is without foundation, however, because no claim was ever made this was in fact correct, either during trial or in the hearing on the motion for a new trial. If his had indeed been true, this Court may rest assured that Davis's defense counsel would have ferreted it all out. Davis was represented by one of north Mississippi's best criminal defense attorneys.