## Joe Reinhard v. The State.

### No. 3816.   Decided November 6, 1907.

**1.—Murder in First Degree—Bill of Exceptions—Special Venire.**

Where a motion to quash the special venire has not been reserved by bill of exceptions, it cannot be considered on appeal.

**2.—Same—Challenge for Cause—Jury and Jury Law—Bill of Exceptions.**

Where the challenges for cause are not sufficiently set out in the bill of ex-

ceptions, they cannot be considered on appeal; besides the court was justified in overruling the causes' for challenges.

**3.—Same—Evidence—Letter—Arrest—Insanity—Duress.**

Where in a trial for murder, it appeared that the defendant before the homicide, and upon solicitation of a justice of the peace, went to the house of deceased, whom he was charged to have seduced, and was asked to marry by said justice, and while waiting there for the license, shot the deceased and himself, there was no error in permitting said justice of the peace to testify to the contents of a certain letter he had written to the father of defendant and which defendant had read, and also certain conversations between these parties with regard to the seduction of deceased by defendant, to the effect that defendant must marry her, or else be prosecuted for seduction, and this, although defendant may have been under arrest or duress for such seduction; besides the testimony was admissible on the question of insanity which was relied on as a defense.

**4.—Same—Declaration of Defendant—Confession.**

Where upon trial for murder the State introduced testimony with reference to the statements of defendant, which were made to the State's witness in the nature of a confession when the defendant was .not under arrest, the same was admissible.

**5.—Same—Evidence—Insanity.**

Upon trial for murder testimony to the effect that defendant's father and uncle had known the family of defendant on the paternal and maternal sides in the ascending line as well as collateral kin, and that no member of said family had been charged with crime, etc., up to the time of the trial of defendant, and which had no bearing on the question of insanity, was inadmissible.

**6.—Same—Evidence—Declarations of Defendant.**

Upon trial for murder, where the mother of defendant upon cross-examination denied that she had declared upon reaching the home of the deceased, where she found the defendant lying on the floor where he had shot himself, that she cried out, "Oh Joe, I begged you not to do this, and you have gone and done it any way"; there was no error in permitting the State to introduce a witness to show that the defendant's mother immediately upon her arrival at the side of her son did make such declaration, and that the defendant, looking at the deceased, then said, "The wretch,. she thought she could do with me as she wished, and if it was to do over I would do it again." This was admissible as original evidence.

**7.—Same—Argument of Counsel—Allusion to Defendant's Failure to Testify.** ·

Where upon trial for murder, the mother of deceased had testified that the defendant had declared to her and her deceased daughter that if the matter got into court (referring to himself and deceased), there would be some dead people lying around there; and it was not clear from the defendant's bill of exceptions, or the explanation of the court that this statement was made by defendant to the witness and deceased alone, but that other parties were present, there was no error in the State's counsel's argument in commenting on this statement, and that it was not denied or controverted; as the ruling of the court will be presumed to be correct.

**8.—Same—Misconduct of Jury—Adjournment.**

Where upon appeal from a conviction of murder, the matter of the misconduct of the jury was not filed until some days after the adjournment of the trial court, it could not be considered.


Appeal from the District Court of Kerr. Tried below before the Hon. R. H. Burney.

Appeal from a conviction of murder in the first degree, penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*W. C. Linden, Lew Wallace* and *Jno. R. Storms,* for appellant.—If the statement of counsel was a reference to the defendant's failure to testify, if it could have been corrected at all, could have only been corrected by a charge of the court to disregard the same. The evidence clearly shows that it was a reference to the defendant's failure to testify, because there were only two witnesses to these remarks, living, the defendant, whom it was claimed had made them, and Mrs. Kutzer, who had testified to them, who is referred to in the remarks of counsel as "that old woman." Hanna v. State, 46 Texas Crim. Rep., 5; Jordan v. State, 29 Texas App., 595; Wilkins v. State, 33 Texas Crim. Rep., 320; Hunt v. State, 28 Texas Crim. App., 149; Alvilla v. State, 32 Texas Crim. Rep., 136; Code of Crim. Proc., art. 770; Hánkins v. State, 39 Texas Crim. Rep., 262; McPherson v. State, 15 S. W. Rep., 174; State v. Baldoser, 88 Iowa, 57; Baughman v. State, 14 Texas Ct. Rep., 254; Johnson v. State, 31 Texas Crim. Rep., 464.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder in the first degree, a life sentence being awarded.

When the case was called for trial motion was made to quash the special venire. This is found in the record, and the assignment of error based upon it being overruled. Bill of exceptions was not reserved, and as presented it cannot therefore be considered.

Challenge for cause was interposed to some of the jurors, which, being overruled, they were peremptorily excused. Error is assigned because appellant was forced to exhaust some of his peremptory challenges upon said jurors, and thereafter jurors were forced upon him which were objectionable. The bill of exceptions does not show any real objection to the jurors who sat in the case, but that phase of the question is unnecessary to be discussed, because the bill of exceptions, as explained by the court, justified the court in overruling causes for challenge.

The State introduced Herman Schultze, justice of the peace, who testified that he wrote a letter to the father of appellant in regard to a proposed settlement between defendant and his family, and the family of the deceased Earnestine Kutzer, which was then pending in regard to a report that said Earnestine Kutzer was pregnant by defendant, the substance of which letter was that the witness would not permit the settlement to be made, and if the matter was not settled at once the witness would have to report the same to the courts, and that he also said to appellant's father that he was as deep in the trouble as was the defendant, and that on the twenty-sixth, or the following day he reached the home of defendant and his father, and discussed the matter with them, and that he then told defendant that he could not, as an officer, permit the proposed settlement to be made, and he referred to what had been told him by Mr. Kutzer, father of the girl, to the effect that an

abortion was to be committed upon the girl; that appellant and his father stated they thought the matter had been settled that morning and the girl was to go away; that witness insisted that defendant should go with him to Kutzer and arrange to marry the girl or make some settlement of the matter satisfactory to Kutzer; that appellant's father told appellant that perhaps he had better go with the witness and had better marry the girl. Appellant consented to go, and that witness knew from the conversation that appellant had read the letter written by him to appellant's father the previous day; that he thought he had signed the letter officially. The substance of this letter, without going farther into it, was to the effect that Earnestine Kutzer, the deceased, was pregnant, and that appellant was the author of her disgrace, and the justice of the peace was trying to induce him to marry the girl, and would not permit his procuring an abortion. Appellant went with the justice of the peace to the residence of Kutzer where, after talking the matter over, the justice of the peace, phoned to Kerrville to secure a license to marry them. The bill does not show that appellant agreed to this, though he did not disagree. A short time afterward, and while at the residence of Kutzer, appellant went in the room where the girl was, and after talking with her awhile shot her to death, and then tried to kill himself by shooting. It is contended that appellant was under duress at the time, and all of this testimony was inadmissible. It will be noted that at the time of the occurrence, if under arrest at all, he was held for a different offense, to wit: seduction, there having been no charges preferred however. Under this state of case we are of opinion that appellant was not under arrest, and as before stated, if so, it was for seduction and not for this homicide. This testimony was therefore admissable even though he was under arrest. See Mathis v. State, 39 Texas Crim. Rep., 549. We believe this was admissible upon another ground; that is, touching his insanity, as that was the real defense upon which appellant relied in the case. See Burt v. State, 38 Texas Crim. Rep., 439 and Cannon v. State, 41 Texas Crim. Rep., 467.

Error is assigned in regard to the introduction of the testimony of Dr. Jones on the ground that the statements of appellant were not voluntary. It was in the nature of a confession, and the party not being under arrest, it was clearly admissible. However, appellant does not brief this assignment. There is also an assignment upon the ruling of the court rejecting the evidence of appellant's father, John Reinhard, and in refusing to permit him to prove by his father, John Reinhard, and his uncle, Jacob, that they had known the family of the defendant on the paternal and maternal sides in the ascending line as well as collateral kin, and that no members of said families had been charged with crime, nor had committed any offense up to the time of the trial of this defendant. No authorities are cited in support of this proposition, nor any tangible reason given, it occurs to us, why this testimony was admissible. We do not understand exactly what bearing or how this would

relate to the question of insanity, nor do we think it necessary to discuss it.

While Mrs. Reinhard, mother of defendant, was being cross-examined, she was asked if it was not a fact that immediately upon her arrival at the side of her son, appellant, at the home of the deceased, where he was lying on the floor in the room where he had shot himself, she cried out, "Oh Joe, I begged you not to do this and you have gone and done it anyhow." Objection was urged to this because it was the remark of a bystander, not a part of the res gestæ, and would not be the subject of legitimate impeachment, because it would be immaterial and collateral. Before being overruled, she answered in the negative. Then the State was permitted to introduce Mrs. Mertz, and offered to prove by her that Mrs. Reinhard, immediately upon her arrival at the side of the defendant, where he was lying at said place, cried out, " Oh Joe, I begged you not to do this and you have gone and done it anyhow." That appellant then looked at deceased, Earnestine Kutzer lying on the sofa, and said in German, "The wretch, she thought she could do with me as she wished, and if it was to do over, I would do it again." Appellant objected on the ground that it was a remark of a bystander, no part of the res gestæ, and answer was not in response to the alleged statement, That Dr. Schnell had testified that he arrived at the place of the shooting before Mrs. Reinhard and was there at the time Mrs. Reinhard arrived, and that the defendant was in a state of collapse and practically unconscious at that time, and it is urged from this it appeared that defendant was irrational and irresponsible and not in a condition to be held responsible for his utterances. We are of opinion this was admissible. It was not the remark of a bystander, as that matter is legally understood. This does not come within the authority of Felder v. State, 23 Texas Crim. App., 477; Sauls v. State, 30 Texas Crim. App., 496, or in that line of authorities. Here the remark was pointedly directed to appellant, and his answer, pointing to his deceased victim lying on the sofa, indicated that he understood the whole matter, and it was admissible as original evidence, and in our opinion had a further bearing upon the question of insanity, but it was clearly admissible as original evidence independent of any question of insanity.

The following bill, with reference to the introduction of the testimony of Pancratz, need not be considered, as the bill was refused by the court, and it was not otherwise verified.

Mrs. Kutzer testified for the State that she was the mother of the deceased, and that at a time when she and the deceased and no other persons were present, the defendant said to them referring to a matter between himself and the deceased, "If this thing gets into the court there will be some dead people lying around here." Mr. Morriss, counsel for the State, in his argument, referred to this evidence as bearing upon the question of express malice and murder in the first degree, and said, "Gentlemen of the jury, there is abundant evidence of express malice found in the threat that, 'if this matter gets into the court there will

be some dead bodies here, made by the defendant.' You know that old woman testified to the threat, and it is not denied or controverted by any suspicious circumstance." Appellant's counsel here stopped said attorney and excepted to the argument. A controversy arose as to the language used by State's counsel; he said to the court, "I know what I said because I was very guarded in saying it." Exception was reserved, alleging that the remark was a reference and allusion to defendant's failure to testify. This is practically as the bill was made and presented to the court. The court, however, explains, as follows: "That the witness Mrs. Kutzer did not say that no other persons were present, but said that the statement by defendant was made to her and her daughter, but it appears that they were the only parties present, considering her entire testimony." This leaves the bill in such a confused and uncertain state that we hardly know just what it does mean. An examination of the testimony of Mrs. Kutzer leaves it somewhat doubtful, and in about as uncertain condition as does the bill of exceptions. There are decisions which go to the extent of holding that where the defendant and witness alone are together, and the witness details a conversation of material character, and the accused does not take the witness stand, an argument which in effect would refer to the failure of defendant to testify, by stating that no witness denied the said statement, etc., the cases have been reversed; but here an examination of the facts in aid of the bill of exceptions is permissible, as the court refers to the evidence to show that Mrs. Kutzer had other daughters besides the deceased. As the bill is presented in its uncertain condition, we do not believe it calls for a reversal of the judgment. An examination of Mrs. Kutzer's testimony bears out the statement of the court that Mrs. Kutzer did not say there were no other persons present, but she did state that the statement was made to her and her daughter, and then draws a conclusion, in a general way, that these were the only parties present. Wherever a bill of exceptions brings to the attention of this court a matter for review, it must be specific and certain enough to point out the error and not leave it to inference. The ruling of the trial court will be presumed to be correct, and in order to overcome this presumption, the record, in a legal way and with legal sufficiency, must manifest the error requiring a reversal of the ruling of the trial court. We do not believe this bill is in such condition that it requires us to reverse this judgment.

Misconduct of the jury is relied upon, in that they discussed the failure of appellant to testify in his own behalf during the trial. The statement of facts in regard to this matter was not filed until some days, eighteen or twenty perhaps, after the adjournment of court. This could not be done. Evidence in regard to motion for a new trial must be filed during the term in order to warrant its revision. See Mikel v. State, 43 Texas Crim. Rep., 617, and Black v. State, 41 Texas Crim. Rep., 185.

We are of opinion that the court's charge is sufficient, and that there

is nothing in the contentions of sufficient importance to require a reversal from this standpoint.

As the record is presented, we do not believe that there are any errors of sufficient importance to require a reversal of the judgment and it is therefore affirmed.

*Affirmed.*

Henderson, Judge, absent.