## FORESTER v. STATE.

(Court of Criminal Appeals of Texas. Nov. 26, 1913. Rehearing Denied Feb. 11, 1914.)

1. JURY (§ 67*)—SUMMONING — INTEREST OF SHERIFF.

In a prosecution for assault with intent to murder, the sheriff was the prosecuting witness, and accused's motions to have unprejudiced citizens perform the duties of the sheriff and his deputies, and to require veniremen whose names were drawn from the wheel to be summoned, were denied. Code Cr. Proc. 1911, art. 54, provides that all duties imposed on a sheriff may lawfully be performed by his deputy, while article 680 declares that accused may challenge the array only on the ground that the officer summoning the jury has acted corruptly and has willfully summoned persons known to be prejudiced against accused. Held, that as no special venire is authorized in prosecutions for ordinary felonies, and as the statute expressly directs how the juries shall be formed, the denial of accused's motions was not erroneous; it not appearing that the sheriff acted, or that his deputy corruptly summoned only those veniremen who were prejudiced against accused.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 291–302, 306; Dec. Dig. § 67.*]

2. CRIMINAL LAW (§ 363*) — EVIDENCE—ADMISSIBILITY.

In a prosecution for assault with intent to murder, evidence by a physician, who reached the prosecuting witness some ten minutes after the assault, to the effect that the witness was conscious when he reached him, but was pale from the loss of blood, is admissible.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 804 ; Dec. Dig. § 363.*]

3. HOMICIDE (§ 174*)—EVIDENCE — ADMISSIBILITY.

In a prosecution for assault with intent to murder, evidence of the finding of automatic pistol shells and bullets at the place of the crime on the morning after the shooting is admissible.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 359–371; Dec. Dig. § 174.*]

4. CRIMINAL LAW (§ 339*)—EVIDENCE—ADMISSIBILITY.

In a prosecution for assault with intent to murder, it was not improper to permit a telephone operator to testify that she knew the voice of accused over the telephone, and heard her on the night of the assault and previous thereto, talking over the telephone.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 767–772; Dec. Dig. § 339.*]

5. CRIMINAL LAW (§ 1210*) — CONVICTIONS—SENTENCE.

Where accused, who was convicted of felony, had been convicted about a year before for

another offense and sentenced to two years' confinement in the penitentiary, and the record did not show that she had been pardoned, the court, in accordance with Code Cr. Proc. 1911, art. 862, providing that, when an accused has been convicted in two or more cases and the punishment assessed in each case is confinement in the penitentiary, judgment and sentence shall be rendered in each case in the same manner as if there had been but one conviction, except that the punishment in the second and subsequent conviction shall be limited to begin at the expiration of the first sentence, properly sentenced accused to confinement in the penitentiary for a term of years to begin at the expiration of the first term.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3298–3301, 3315; Dec. Dig. § 1210.*]

6. CRIMINAL LAW (§ 1099*)—APPEAL—STATEMENT OF FACTS.

A statement of facts relating to evidence heard on motion for a new trial will not be considered if not filed in term time.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2866–2880; Dec. Dig. § 1099.*]

Appeal from District Court, Grayson County; W. J. Mathis, Special Judge.

Pearl Forester was convicted of assault with intent to murder, and she appeals. Affirmed.

Sturgeon & Beauchamp, of Paris, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

PRENDERGAST, P. J. Appellant was convicted of an assault with intent to murder, and her punishment fixed at the lowest prescribed by law—two years in the penitentiary.

The evidence is amply sufficient to sustain the verdict and judgment.

The assault was charged to have been committed on November 2, 1912, on Lee Simmons, who was a few days later elected sheriff of said county, and duly qualified and was such sheriff at the time of this trial. The case was tried and the verdict rendered on May 7, 1913. The court adjourned for the term ten days later. When the case was called for trial, and after the state had announced ready, but before appellant announced she made a motion to have the court appoint some citizens of the county, who had no special interest in the case, or the result thereof, to perform any and all the duties incumbent upon said sheriff and his deputies. The court overruled this motion and qualified appellant's bill of exception to his action, by stating that she did not ask that the constable perform said duties, and that no injury was shown. Before the selection of the jury and after the court ordered talesmen summoned, she made another motion setting up that the jury commissioners had drawn 60 names from the jury wheel to be summoned as jurors for that week of the court; that the sheriff did not summon 15 of them, and only 22 of them appeared as jurors, and she therefore prayed the court to require the others so drawn from the jury wheel to be summoned. The court qualified her bill to the overruling of this motion by stating that all regular jurors were accounted for prior to the filing of said motion. This bill of exception thus qualified was filed on June 13th about four weeks after the court had adjourned for the term. At that time appellant took another bill to the court's said qualification, claiming that nothing in the record showed they were accounted for and because in conflict with the court's testimony on the subject, which was heard on her motion for new trial. This bill was not filed until June 13th. The court qualified this, and appellant accepted and filed it, stating the same thing, that at the time of appellant's complaint all regular jurors had been accounted for. If we could consider this latter bill and the testimony purported to be heard, it would show, in effect, that the presiding judge, who tried this case, testified on said hearing of the motion for new trial that quite a number of the jurors who were drawn from the jury wheel were excused by him for legal cause, and some on account of legal exemption, and that 22 of the regular jury were thus left, who appeared as jurors at the time. Appellant made another motion challenging the array of talesmen because they were selected and summoned by the sheriff and his deputies with a view to cause her to be convicted and they were prejudiced against her and friends and supporters of the sheriff. The court, in approving appellant's bill to his overruling this motion, qualified it by stating that no proof was offered in support of said motion. We have stated all the above matters pertaining to the summoning of the jurors, and to the organization and selection thereof so as to discuss them together.

[1] In the first place, the sheriff was not a party to the suit, although he was the person alleged to have been assaulted. The state of Texas was the party to the suit against appellant. The duties of a sheriff, prescribed by law, are such as must necessarily make him more or less active for the state in every felony case prosecuted in the courts, and in a great many of such cases he is an important witness and used as such. Of course, the fact that he is an important witness in any case does not disqualify him from acting in his official capacity in serving any and all process therein. There is nothing in this record anywhere which shows that said sheriff, Simmons, summoned those jurors, whether those drawn by the jury commissioners or the talesmen. Article 54, C. C. P., is that, whenever a duty is imposed by this Code upon the sheriff, the same duty may lawfully be performed by his deputy. And the record nowhere shows or tends to show that he or any of his deputies in any way talked to any of the jurors who were summoned, or in any other way tried to in-

fluence them against appellant. There is with the record what is agreed to by all parties and approved by the court as the complete testimony by question and answer on their voir dire of every juryman, some 37, summoned in this cause. This was not filed until June 20, 1913, about five weeks after the court adjourned. If we could consider this, it would show that said sheriff personally did not summon a single one of the jurors, but that they were summoned by two of his deputies, and the testimony of each of these jurors would show that neither the sheriff nor any of his deputies in any way whatever attempted to influence them against appellant, or said anything to them in any way about her, or in connection with this case, other than merely summoning them; and that said jurors were wholly disinterested, entirely without prejudice, and in every way fair and impartial.

Our statute expressly provides that no challenge to the array of jurors shall be allowed when the jurors have been selected by jury commissioners. C. C. P. art. 681. Article 680 provides that the defendant may challenge the array for the following causes only: That the officer summoning the jury has acted corruptly, and has willfully summoned persons upon the jury, known to be prejudiced against defendant with a view to cause him to be convicted. While appellant's motion alleged this ground for challenge to the array of talesmen, she swore to it only "to the best of her belief and information." As stated above, the court, in qualifying the bill, said she offered no proof in support of said motion, and, as stated above, if we could look to the whole record, it would show that her allegation was affirmatively untrue and without foundation.

It will be borne in mind that this was an ordinary felony case—not a case where a special venire was authorized or permitted by law. It is only in special venire cases that the law authorizes or permits an attachment or other process to be issued for special veniremen who do not appear. C. C. P. art. 673. And that even in such cases the cause shall not be unreasonably delayed on account of the absence of such veniremen. Article 696, C. C. P. This being an ordinary felony case, the statute expressly directs how the jury shall be formed in chap. 4, tit. 8, art. 702 et seq., and there is nothing in the record to show that this statute was not strictly complied with. So that in our opinion no error is shown by the court in overruling appellant's said motions.

[2] There is testimony in the record to the effect that, on the evening of the night said Simmons was shot, appellant had a conversation with the constable at Sherman in which she asked him if "we went out of office when the sheriff did"; he told her they would; and she said she hated that. Mr. McAfee was sheriff at that time. She said she always hated officers until she came here and liked these, and she hated to see them go out. She further asked him if he did not wish somebody would kill Mr. Simmons before he went in office, and, when he told her he did not, she said she would. She said if she was a man she would kill anybody that interfered with her business that way. And at the time of this conversation she pulled out an automatic pistol from under her pillow and exhibited it to the witness. He said it must have been a 32 or a 38; that about 10 o'clock that night appellant alone went into a drug store and 'phoned to the transfer company to send her a conveyance to a certain place in Sherman. She then left the drug store, but soon after returned thereto and again called up the transfer company to know why the conveyance had not been sent to her. She at once left the drug store again. Very soon after this the transfer company did send a carriage to the place designated by her, and she got in the carriage and directed the driver to take her to Mr. Simmons' residence, telling the driver to call Mr. Simmons out to the carriage, and, as an excuse why she did not go to the door of his residence and call him out herself, to tell him that she was crippled and could not, and to induce him to come to the carriage to see her. She was a stranger to this hackman. The hackman took her to Mr. Simmons' residence, went in and knocked, and, upon Mr. Simmons coming to the door, delivered to him her said message. This was about 10:20 at night. Mr. Simmons and family had already gone to bed, but were not asleep. He at once partially dressed and went out on the edge of the sidewalk to the carriage. Either the door thereto was then open, or the glass of the door lowered. He stepped up to the carriage, and she asked, "Is this Mr. Simmons?" He replied, "Yes." She thereupon immediately began shooting at him and shot from four to six times; three of the balls taking effect in the body of Mr. Simmons. He ran some 30 feet, got behind a tree; she got out of the carriage, walked up the street by the tree he was behind hunting for him. Before this he did not know who it was who called him out to the carriage, nor who was shooting him, but then recognized, and swore that it was, appellant. She did not discover him behind the tree, and, apparently not knowing what had become of him, she did not go back to the carriage, but left the scene and was soon afterwards caught and arrested. The evidence was amply sufficient to identify her as the person who shot said Simmons. Immediately after appellant left the scene, Simmons ran into his residence and had Dr. Netherly immediately called over the 'phone. He had also retired, but hastily partially dressed, jumped into his automobile, and went to Mr. Simmons' residence, some seven or eight blocks, as rapidly as he could, reaching there within about ten minutes from the shooting. Dr. Netherly testified to the wounds on said

Simmons and Simmons' condition immediately after he reached him.

Appellant did not testify. Her defense was alibi and denying her identity as the party who shot Simmons.

[3, 4] The court did not err in permitting Dr. Netherly to testify over appellant's objections that Simmons was conscious when he reached him and examined him on this occasion, and that he was pale from the loss of blood, but calm and not specially excited at the time. There is nothing by appellant's bill or otherwise to indicate that this testimony was not res gestæ. It was not hearsay. Neither did the court err in permitting Mr. Goode to testify that early the next morning he examined the sidewalk and yard in front of Simmons' residence and found a steel bullet on the sidewalk. Neither did the court err in permitting the witness Paul Smith to testify that he was present the next morning, examined the sidewalk and premises in front of Simmons' residence, and saw Mr. Etchison find some empty 38 automatic pistol shells there. The fact that this steel pistol ball and these shells were not found till the next morning would go to the weight only and not to the admissibility of this evidence. Neither did the court err in permitting Miss Mattie Gamble, the young lady telephone operator, to testify that she knew the voice of the appellant over the 'phone and heard her the night Simmons was shot, and previously thereto, talking over the 'phone.

[5] When the court sentenced the appellant in this case, the state introduced before him a properly certified copy of a judgment of the district court of McLennan county, Tex., in a case against appellant, dated April 25, 1912, sentencing her to confinement in the penitentiary for the term of two years from that date for theft of property of over the value of $50. At the same time, as shown by the bill, Mr. Lyle, her brother-in-law, testified, as stated by the court in his qualification of the bill, that she was the same person described in said judgment of conviction from McLennan county, and no proof was offered that she had been pardoned. The court thereupon sentenced her in this case, in accordance with the verdict of the jury, to two years' confinement in the penitentiary; such confinement to begin when the sentence in the McLennan county case expired. This was strictly in conformity with the statute (article 862, C. C. P.), and the many decisions of this court thereunder (Culwell v. State, 157 S. W. 765, and authorities therein cited).

[6] The only other matter necessary to mention is that by appellant's motion for new trial he attacked the verdict of the jury on account of the improper conduct of the jury in considering their verdict on several grounds. The state contested this and filed an answer denying all of her allegations in that regard. The record shows, as stated above, that the verdict and judgment in this case were rendered on May 7, 1913. The motion for new trial was heard and overruled on May 16th, at which time the court heard evidence on these contested issues, and then overruled the motion. The court did not adjourn until the next day, May 17th. There is with the record in this case what purports to be a statement of facts showing all this evidence. It was not filed in the court below until June 20, 1913, some 5 weeks after the court adjourned. Appellant's attorneys have filed a motion and affidavits herein, seeking to have this court consider said purported statement of facts, but in no way shows any such state of facts as would authorize this court to consider it. The said purported statement of facts is on less than seven pages of typewritten matter. It could more properly have been contained on only three or four pages. There is no sufficient reason whatever shown or urged why this statement was not filed within term time. It could have been written out by the stenographer, or any one else, easily within an hour from the time appellant's motion for new trial was overruled. The court did not adjourn until the next day.

It has been the uniform holding of this court in a great many cases that such statements must be filed during term time and that this court cannot consider them, unless so filed. It is needless to collate all of the cases. We cite only some of them: Black v. State, 41 Tex. Cr. R. 185, 53 S. W. 116; Reinhard v. State, 52 Tex. Cr. R. 64, 106 S. W. 128; Jarrett v. State, 55 Tex. Cr. R. 551, 117 S. W. 833; Mikel v. State, 43 Tex. Cr. R. 617, 68 S. W. 512; Williams v. State, 56 Tex. Cr. R. 225, 120 S. W. 421; Probest v. State, 60 Tex. Cr. R. 609, 133 S. W. 263; Tarleton v. State, 62 S. W. 748; Knight v. State, 64 Tex. Cr. R. 541, 144 S. W. 977; Bailey v. State, 144 S. W. 1005. In the absence of a statement of facts, this court must conclude that appellant's attack on the jury was not sustained.

The judgment is affirmed.