### J. T. Goosby v. The State.

No. 4178. Decided October 25, 1916.

**1.—Disorderly House—Charge of Court.**

Where, upon trial of permitting the keeping of a disorderly house, the charge of the court did not conform to the allegations in the information, and the evi-

dence introduced supporting such allegations, but authorized the conviction, on all the clauses contained in the statutes, for unlawfully and knowingly permitting a house to be kept for purposes of prostitution, the same was reversible error.

### 2.—Same—Evidence—Vagrancy—Disturbing the Peace.

Where, upon trial of permitting the keeping of a disorderly house, the defendant objected to oral testimony that one of the inmates of the alleged house had pleaded guilty to vagrancy, and that defendant pleaded guilty to disturbing the peace, and urged that the complaint and information was the best evidence, and it appeared that no proper predicate had been laid for the introduction of such oral testimony, and the fact that defendant was charged with disturbing the peace, was not admissible in evidence, the objection should have been sustained.

### 3.—Same—Evidence—General Reputation.

Upon trial of permitting the keeping of a disorderly house, it was inproper to permit the State's counsel on direct examination to ask the witnesses from whom they obtained the information that the alleged house had a bad reputation, and an exception thereto should have been sustained.

Appeal from the County Court of Johnson. Tried below before the Hon. B. Jay Jackson.

Appeal from a conviction of permitting the keeping of a disorderly house; penalty, a fine of two hundred dollars and twenty days confinement in the county jail.

The opinion states the case.

*W. B. Featherston* and *J. O. Lockett,* for appellant.—On question of insufficiency of the evidence: Ramey v. State, 45 S. W. Rep., 489; Bowman v. State, 164 id., 846; Hitchings v. State, 143 id., 1164; Johnson v. State, 13 id., 1005.

*C. C. McDonald,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—The charging part of the information is that, from the 1st day of June, 1915, and on each successive day from that date to the 30th day of July, 1915, appellant was then and there the owner of a certain house and did then and there unlawfully and knowingly permit said house to be kept as a house for purposes of prostitution and where prostitutes were permitted to resort and reside for the purpose of plying their vocation.

The evidence for the State is that Hays and his family had rented the house in question, and had Mrs. Raney there as nurse to wait on his wife, who was soon expected to be confined; that Hays and his family moved into the house along about the first of June and vacated it about the 3d of August. The State introduced evidence of the general bad reputation of the house, and that appellant had been seen going there on several occasions and coming away, and on one occasion officers went to the house and Mrs. Raney was seen in a room of the house and appellant leaving the room buttoning his pants. There is evidence for the State that on one or two occasions other women were

there and they were somewhat hilarious; some of them were out in the yard not fully dressed. The evidence for the defendant is to the effect that Hays had rented the house, and that Mrs. Raney was an inmate of the house in the capacity of nurse for his wife, who was shortly expected to be confined. Hays and his wife testified there was no disorderly conduct or lewdness carried on in the house, and that on the occasion of the officers' visit to the house, when it was stated appellant was seen coming out of the door buttoning his breeches, Hays was sleeping on the front gallery. He testified, as did Mrs. Hays, that there was no lewdness carried on in the house, and that the house was under their control. This is the substance of the case.

The first clause of the court's charge states, generally, that the information charges appellant with knowingly permitting a disorderly house to be kept in Johnson County, on or about the 1st day of June, 1915, and on each successive day from that date to July 30, 1915. The second and third clauses of the charge copies two statutes with reference to disorderly and bawdy houses, and sets out all specified grounds of the statute; and the fourth clause charges that "Any room or part of a building or other place appropriated or used for either of the above purposes enumerated is a disorderly house." The following is the court's charge submitting the issue to the jury: "Now, bearing in mind the above and foregoing definition and instruction, if you believe from the evidence beyond a reasonable doubt that defendant, Goosby, did unlawfully and knowingly permit to be kept as a house for purposes of prostitution, and where a prostitute or prostitutes were permitted to resort and reside for the purposes of plying their vocation, then in that event you will find the defendant guilty as charged in the information, and assess his punishment at a fine of $200 and by confinement in the county jail for twenty days for each day he permitted, if you find he did, said house to be kept as a disorderly house."

In the definition of the offense the court gave the following: "Any person who shall, directly or as agent for another, or through any agent, keep or be concerned in keeping or aid or assist or abet in keeping a disorderly house, in any house, building, edifice or tenement owned, leased, occupied or controlled by him directly or as agent for another, or through any agent, shall be deemed guilty of keeping or being concerned in keeping or knowingly permitting to be kept, a disorderly house." Then the definition is given as set out in the statute, that a disorderly house is defined to be any assignation house, or any theater, playhouse or house where spirituous, vinous or malt liquors are kept for sale, and prostitutes, lewd women or women of bad reputation for chastity are employed, kept in service, or permitted to display or conduct themselves in a lewd, lascivious or indecent manner, or to which persons resort for the purpose of smoking or in any manner using opium, and so on.

Looking at these phases of the charge and the application of them by the court, it will be readily discovered that the court authorized

the conviction of appellant for any and all of the clauses therein defined, for he says, "Now, bearing in mind the above and foregoing definition and instruction, if you believe from the evidence beyond a reasonable doubt that defendant, Goosby, did unlawfully and knowingly permit to be kept as a house for purposes of prostitution, and where a prostitute or prostitutes were permitted to resort," etc., find the defendant guilty. It is a fundamental proposition that in submitting the law of a case authorizing a conviction, the charge must conform to the allegations in the information or the indictment and the evidence introduced supporting such allegations. Appellant was charged as the owner of the house, and that he permitted such house to be kept for the purposes of prostitution, and where prostitutes were permitted to resort and reside for the purposes of plying their vocation. In order to properly submit this case to the jury the court must confine his charge to the allegations that appellant was the owner of the house and permitted prohibited conduct. The court authorizes a conviction without confining the jury to the alleged fact that appellant was the owner of the house. Exception was promptly taken, and special requested instructions refused. The court was in error in both instances.

Another question is presented. Appellant objected to verbal testimony to the effect that Mrs. Raney had pleaded guilty to vagrancy on the 29th day of July, and that appellant pleaded guilty to disturbing the peace on that day. Exception was reserved and overruled. Among other things, it is urged that if the evidence was admissible, the complaint and information was the best evidence as to the fact that she was charged with vagrancy and what part of statute was violated. Witness testified that he did not know where the complaint was; that he had not looked for it; and he further testified that in pleas of guilty they usually destroyed these pleadings. This was not a proper predicate for the introduction of the oral testimony. See Bowman v. State, 73 Texas Crim. Rep., 194. There is nothing to show, as we understand this record, that Mrs. Raney was then living in this house, and the complaint should have been introduced to show, if it would do so, that she was charged with being a common prostitute as a basis for the vagrancy. The fact that appellant was charged with disturbing the peace would not be admissible evidence in this character of case as presented by this record. What it had to do with permitting prostitutes to reside in the house is not undertaken to be shown. This testimony should not be permitted upon another trial in the condition shown by this record.

There is another question. A couple of State's witnesses testified to the bad reputation of the house, and they were asked on direct examination by State's attorney from whom they obtained such information. Each one gave the name of his informant, to the best of his recollection. Exception was reserved to this, which should have been sustained. The State is not permitted to offer this testimony in chief. The defendant may have tested the memory or credibility of these witnesses had he

seen proper to do so by probing their means of information as·a basis for their testimony for bad reputation or for their impeachment. The State can not introduce it as original testimony in proving up its case.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*