HOWARD GRAY v. THE STATE.

No. 5843. Decided October 13, 1920.

**1.—Murder—Appeal Bond—Adjournment of Court—Approval.**

Under the Statute, Article 904 C. C. P., it is necessary where an appeal bond is given not only for it to be approved by the sheriff, but also by the trial judge, or his successor in office; and where this was not done, the appeal must be dismissed. However, a proper appeal bond having been filed, the case will be re-instated.

**2.—Same—Evidence—Cross-examination—Husband and Wife.**

Where, upon trial of murder, defendant placed his wife upon the witness stand and brought out testimony as to her communication to him as to the insulting conduct by the deceased and she was thereupon cross-examined by the State with reference to this matter and asked as to when the conversation occurred, to show that the same occurred early in the evening instead of late in the evening, etc., the same was legitimate cross-examination and there was no error.

**3.—Same—Misconduct of the Jury—Bills of Exceptions.**

Where the bills of exception were filed after the adjournment of court, setting out testimony with reference to matters occurring after the jury's retirement, the same could not be considered on appeal.

**4.—Same—Argument of Counsel—Inferences Drawn from the Evidence.**

Where the argument of the counsel for the State was a legitimate inference drawn from the evidence, there was no reversible error; besides, the court instructed the jury to disregard this argument.

(1)

**5.—Same—Argument of Counsel—Harmless Error.**

Where, upon trial of murder, the argument of State's counsel that the old hip-pocket play was threadbare, etc., the same was objectionable and should not have been made, but in as much as the jury gave to the defendant the minimum punishment, there was no reversible error, under the facts in the instant case.

**6.—Same—Rehearing—Motion for New Trial—Continuance—Rule Stated.**

Where, appellant in his motion for rehearing contended that the rule with reference to testimony taken on motion for new trial should be filed during term time applies only to questions of misconduct of the jury, held that it has been uniformly decided that the provisions of our statutes, both civil and criminal, with regard to the preparation and filing of a statement of facts for appeal have reference only and exclusively to a state of facts adduced upon the merits of the case, before the jury or the court, and have no reference to issues of fact formed on grounds set up in motion for new trial, which must be filed during term time. Following Probest v. State, 60 Texas Crim. Rep., 608, and other cases.

Appeal from the District Court of Robertson. Tried below before the Honorable W. C. Davis.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Ben L. Parten* and *Morehead & Bush,* for appellant.—On question of cross-examination of wife: Marsh v. State, 112 S. W. Rep., 320; Hobbs v. State, 112 id., 308; Taylor v. State, 167 S. W. Rep., 56; Roberts v. State, 168 id., 113; Johnson v. State, 148 id., 328.

On question of argument of counsel: Johnson v. State, 138 S. W. Rep., 1021; Johnson v. State, 148 id., 328; Liner v. State, 156 id., 211; Harris v. State, 161 id., 126; Marshall v. State, 175 id., 154.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of argument of counsel: Himmelfarb v. State, 174 S. W. Rep., 589; Leach v. State, 139 id., 1153; Maxwell v. State, 153 id., 324.

DAVIDSON, PRESIDING JUDGE.—Appellant appeals from a conviction for murder in which he was allotted five years in the penitentiary.

The Assistant Attorney General moves to dismiss the appeal because the appeal bond is not in compliance with the statute. Appellant did not enter into a recognizance during the term but gave an appeal bond after the adjournment of court. This bond was approved by the sheriff but not by the judge who tried the case as required by the statute. See C. C. P., Art. 904. Under that statute it is necessary where an appeal bond is given not only for it to be approved by the sheriff but it must also be approved by the judge who tried the case, or his successor in office. This bond was not ap-

proved by the judge, and, therefore, it is not in compliance with the law.

The motion of the Assistant Attorney General is well taken and must be sustained. The appeal is dismissed.

*Dismissed.*

### ON REHEARING.

### June 23, 1920.

DAVIDSON, Presiding Judge.—On a former day of the term the appeal was dismissed for reasons stated in the opinion of dismissal. A proper appeal bond has been filed, and the case will be re-instated and disposed of on the questions presented for revision.

The conviction was for murder, the jury assessing the punishment at five years in the penitentiary.

The State's case is made principally by the witness Fannie Dozier. By the testimony it is shown that appellant and deceased lived something like 150 yards or less apart; that the deceased and his wife were living in the same house with her; that at the time of the tragedy the wife of deceased was absent from home on a visit to her mother in Milan County. On the morning of the homicide appellant went to the house occupied by deceased and Fannie Dozier where the tragedy occurred, carrying his shotgun. He stepped upon the gallery, which is shown to be about fourteen or sixteen feet long and something like eight feet in width. On one end of the gallery is the kitchen, in which Fannie Dozier and deceased were at the time. Fannie Dozier was preparing breakfast. Deceased was washing his face from a washpan sitting on an old stove. Appellant called Fannie and handed her a note which he had written her. She stepped out of the door and took the note and as she began reading it appellant fired upon and killed deceased, the load of shot striking him in the left temple. He fell at the stove, and in falling seems to have knocked the stove off of props placed under it. The note written by appellant and given Fannie is in the following language: "This is me friend, Howard Gray. At home now, so be good." It seems to be a conceded fact that defendant and deceased had been upon friendly terms, working together, hauling each with his own team, but working in harmony and from the same place of hauling.

Appellant's theory of the case is made principally by his own testimony and that of his wife. The friendly relation between himself and deceased was testified by appellant. He also states that on Monday they were to accompany each other in connection with some

hauling. Deceased did not go but appellant did. That while he was absent deceased went to his house and found his wife sitting in a chair, tied her hands and forced her to have intercourse with him. In other words, his theory was that rape was committed by deceaseu upon his wife on Monday morning. The killing occurred on the following Saturday morning. Deceased and appellant worked together the remainder of the week, excepting Friday and Saturday. Friday at noon appellant and his wife quit work, went to the house and took their mid-day meal. Subsequently during the evening she informed appellant of the conduct of deceased toward her. She testified that her husband was angry and very much worried about the matter. Appellant says he did not see deceased any more until the morning of the killing; that they had an engagement to go to the town of Calvert about four or four and one-half miles distant on a trading expedition; that they were to go in the same wagon; deceased was to take a hog and appellant something else. They had a conversation with reference to this matter, each being at his own house about 100 or 150 yards apart, in which deceased informed him he was not going. Appellant then wrote the note, got his shotgun and went over to deceased's house and the killing occurred. He testified to writing the note and handing it to Fannie Dozier when he reached the scene of the tragedy, and that he looked up and saw deceased washing his face; that deceased saw him and started, and appellant said he thought he was going to get his gun. The gun was in another room, and it seems from the testimony that in order to get his gun he would have to go out of the kitchen and go to another room. He further testified in this connection that when deceased saw him he started away from where he was washing his face and made a movement which appellant thought indicated he was reaching for a pistol, and he fired. The testimony is in conflict as to whether deceased owned a pistol. Fannie Dozier says he did not, and did not have one about his house. Appellant testified he did own a pistol; that he had seen him with it. This killing occurred, as stated, very early in the morning and while Fannie Dozier was preparing breakfast and deceased was in the kitchen washing his face.

The court charged the jury with reference to murder, manslaughter and self-defense. There were some exceptions to the charge which are not mentioned in the brief and which we think are not of sufficient importance to require consideration.

There was a bill of exceptions reserved to the cross-examination of appellant's wife. The facts reiterate this testimony in question and answer form. The whole bill of exceptions must be viewed simply from the standpoint of these questions and answers, there being no further statement in the bill as to whether or not she had been examined in chief in such manner as to justify the cross-examination. According to the questions and answers we are of opinion the court was justified in permitting the cross-examination. The

cross-examination mainly turned upon the time of the evening on Friday when the conversation occurred between appellant and his wife in which she communicated to him the supposed rape on her person by deceased. In her testimony in chief she placed the conversation as occurring late in the evening. She was cross-examined with reference to this matter as to when the conversation did really occur. She insisted her testimony was correct. The State then asked her if she had not stated at the examining trial that it occurred at a time early in the evening. She qualifiedly denied this but not positively. They then produced and asked her to read her statement at the examining trial which she did, which was in conflict with her testimony on the trial of the case as to the time of the evening. We think this was legitimate cross-examination. Appellant had brought this out and mainly relied upon her communication to him of the insulting conduct or rape.

There are two bills of exception setting out testimony with reference to matters occurring after the jury's retirement. The bills were filed about eighty-eight or eighty-nine days after the adjournment of court. Under the authorities these bills can not be considered. Such bills are required to be taken and approved during the term.

Another bill recites that the prosecuting officer used the following language in his speech to the jury: "I don't know gentlemen of the jury, but I tell you that there is something else behind that we don't know. I tell you that there is another woman at the bottom of it. Howard Gray and Fannie Dozier were mighty good friends." The court instructed the jury to disregard this language. We are of opinion this was a legitimate deduction from the facts. The appellant introduced evidence which tended to show deceased may have been intimate with Fannie Dozier, that is, we think the jury would be authorized to draw such conclusion, and the district attorney would not be transgressing the rule of argument to so state. They were living in the same house together, and deceased's wife was away from home. She was used as a witness on the trial, and, among other things, testified that her husband was a well developed amorous man and that he was very frequent in his acts of intercourse very much against her will at times. She went into a rather particular statement of his amorous qualities and qualifications. His wife had been away from home a week or ten days, and Fannie Dozier was a widow living in the house with him. There is no act shown between them, but these matters were before the jury and the court, as well as the act of the appellant in writing the note and carrying it to Fannie Dozier as above quoted. He gave no explanation why he wrote and carried the note to the woman.

There is another bill of exceptions to the argument of prosecuting counsel which presents a little more difficulty. The language is thus stated in the bill: "That old hip-pocket play is threadbare. There has not been a man tried for murder in Robertson County who did

not make that old hip-pocket defense.'' Objection was urged and promptly sustained, and the court instructed the jury to disregard it. Such language as this should be avoided by prosecuting officers. It jeopardizes a case upon appeal, and the statement of the fact, if it was a fact, would not be admissible usually upon the trial of a case. But inasmuch as the jury gave appellant the minimum punishment of five years for murder, and in our judgment the record presents neither self-defense nor manslaughter, the error was of such a nature as not to require a reversal. If the State's testimony is correct the killing would be upon malice. If appellant's theory of the matter is correct, he eliminated manslaughter by stating that he had a conversation with deceased in the morning before he went to his house and killed him. Pitts v. State, 29 Texas Crim. App., 374; Gillespie v. State, 53 Texas Crim. Rep., 168; Young v. State, 69 S. W. 155. He did not undertake then to kill on account of insulting conduct, and said he was friendly with him, and would not have killed him for this reason, and if he had not made the hip-pocket play he would not have shot him. Appellant, under the circumstances in going to the house of deceased armed with a shotgun and shooting the man without saying anything about the conduct of deceased towards his wife, which he said he desired to do, immediately shot him. Not a word was said between them. This is his view of the case as well as that of the State. While usually the writer would be disposed to reverse this judgment for the remarks of the prosecuting officer, yet under the facts of this case we do not believe they were of such serious nature as to require a reversal.

The judgment will be affirmed.

*Affirmed.*

### ON REHEARING.

October 13, 1920.

DAVIDSON, Presiding Judge.—Appellant has filed a motion for rehearing alleging that the court was in error in affirming the judgment at the last term of this court. Appellant alleges in one of the grounds of the motion for new trial that defendant was absent during the presentation of his application for a continuance. The court heard evidence and overruled appellant's contention. In disposing of the case the opinion stated that evidence taken on the motion for new trial with reference to the grounds thereof could not be considered unless filed during the term of the court at which the trial occurred. Appellant contends, with reference to this question, that this court was in error, and seems to be of the impression that that rule applies only to questions of misconduct of the jury. The rule is laid down and followed that it applies to all questions of fact that

constitute grounds of the motion for new trial. In the Probest case, 60 Texas Crim. Rep., 608, this language is found:

"Since the decision of this court in the case of Black v. State, 41 Texas Crim. Rep., it has been uniformly held that the provisions of our statutes, both civil and criminal, with regard to the preparation and filing of statement of facts for appeal, have reference only and exclusively to a state of facts adduced upon the merits of the case before the jury or the court, as the case may be, and that our statutes have no reference to issues of fact formed on grounds set up in motion for new trial, and that the facts as to such issues, in order to be entitled to consideration on appeal, must have been filed during the term. This rule has since been followed by this court in many cases. Mikel v. State, 43 Texas Crim. Rep., 615; Tarleton v. State, 62 S. W. Rep., 748; Reinhard v. State, 52 Texas Crim. Rep., 59; Jarrett v. State, 55 Texas Crim. Rep., 550; Williams v. State, 56 Texas Crim. Rep., 225."

The quotation has been cited and approved in a great number of cases since. There are quite a number of cases in which this rule has been laid down where the misconduct of the jury did not enter into the decision. Reyes v. State, 81 Texas Crim. Rep., at page 592; Villereal v. State, 80 Texas Crim. Rep., 136; Guerra v. State, 80 Texas Crim. Rep., 329; Sorrell v. State, 79 Texas Crim. Rep., 442; Slade v. State, 85 Texas Crim. Rep., 359; Epperson v. State, 82 Texas Crim. Rep., 245; Miles v. State, 82 Texas Crim. Rep., 490; McConnell v. State, 82 Texas Crim. Rep., 635. It seems from these cases and the established jurisprudence through a long line of decisions that statement of facts with reference to grounds of the motion for new trial, in order to be considered by this court, must be filed during the term of court at which the case is tried; that it will not be sufficient to file it after court has adjourned.

The other questions urged by the motion for rehearing we think have been correctly decided in the original opinion.

Finding no error in the contention of appellant in regard to the matter here discussed, the motion for rehearing will be overruled.

*Overruled.*